COMMONWEALTH *vs.* ALLEN G. LOCKE.

Suffolk.    October 1, 1956. — December 4, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Robbery. Accomplice. Practice, Criminal,* Continuance; Exceptions: whether error harmful. *Constitutional Law,* Due process of law. *Evidence,* Of identity, Corroborative evidence, Relevancy and materiality, Admissions and confessions, Cumulative evidence. *Error,* Whether error harmful.

An order that a robbery case proceed to trial on the next day, a Friday, after an appointment of new counsel for the defendant in place of one who had been counsel in the case for more than a year did not impair the defendant's right to due process of law nor constitute an abuse of

discretion where at the time of such order on Thursday the former counsel was appointed associate counsel, it appeared that the defence had no witnesses, and, after the judge had selected the following Monday for trial, the new counsel informed the judge that he preferred a trial on Friday because of another court engagement on Monday. [110–111]

A conviction of robbery was warranted by evidence that a man other than the defendant snatched a black handbag containing a substantial sum of money in bills and a roll of quarters in a wrapper from a woman on a city street and then joined two other men near by, that a few minutes later three men were seen running on a street in the vicinity of the place of the robbery, of whom one was the defendant and another was carrying a black handbag, that they got into an automobile registered to the defendant and drove away, that shortly thereafter the defendant, alone in his automobile, was arrested before he had had time to go to his lodgings, and that later there were found in his lodgings bills of the same denomination as those stolen and a roll of quarters similar to that stolen, totalling approximately one third of the money stolen. [111]

After a witness at a trial for robbery held more than a year after the robbery had testified that the defendant was one of several men whom he had seen running on a street near the scene of the robbery, further testimony by him that shortly after the robbery he had identified the defendant in a police line-up as one of such men was admissible to corroborate the identification made by him in court. [112]

At a trial for robbery committed by snatching a handbag containing money from a woman on a city street, there was no error on the record in the admission of various exhibits including a strap of the victim's handbag from which the handbag had been torn in the robbery and money found in the defendant's lodgings after the robbery. [112–113]

Questions put to one shortly after his arrest for a robbery respecting his presence in the vicinity of the robbery on the morning it occurred and his reason for being there, and his answers which might have been found false, improbable and evasive, were admissible at his subsequent trial for the robbery. [114]

After police officers at a trial for robbery had testified to finding money in the defendant's lodgings after the robbery, he was not prejudiced by the admission of evidence of conversations between the officers and him in which they told him of finding the money there and he denied knowledge of it. [114–115]

The defendant at a criminal trial was not prejudiced by the admission of evidence of a conversation between him and a police officer where, although the defendant's answers to the officer's questions consisted of denials and it would have been better to exclude the evidence, the questions contained no objectionable accusatory statements. [115–116]

No reversible error appeared at a criminal trial in the admission of evidence of a conversation in the presence of the defendant between a police officer and one who made statements tending to implicate the defendant in the crime and evidence that the police officer then asked

the defendant what he had "to say about that" and the defendant re-
plied, "That is his opinion," where the evidence of the conversation
was cumulative of other evidence and the judge instructed the jury
that if they found such reply of the defendant to be a denial they should
disregard the implicating statements made in the conversation and
that if they found the reply to be equivocal they might consider it to
be an admission of the statements.  [116–117]

INDICTMENT, found and returned on July 29, 1954.

The case was tried in the Superior Court before *Smith*, J.

*George A. McDonough & Joseph M. McDonough*, for the
defendant.

*John J. Sullivan*, Assistant District Attorney, for the
Commonwealth.

SPALDING, J.  The jury could have found these facts.
About eleven o'clock in the morning of July 16, 1954, one
Annie Gavin, a store keeper, went to the branch office of
the National Shawmut Bank on West Broadway in South
Boston and withdrew $860 in bills and a ten dollar roll of
quarters.  She put the money in a black handbag, twisted
the strap of the bag around her wrist, and left the bank to
walk to her store at the corner of Dorchester and West
Second streets, also in South Boston.  She had proceeded
along Dorchester Street to a point where she was about to
cross Bolton Street when a man (not the defendant) grabbed
her bag and tore it from the strap.  He then ran with it to
an automobile that was parked on the corner of Dorchester
and Bolton streets.  The automobile was on Bolton Street
facing away from Dorchester Street.  The robber got into
the automobile, which contained two other men whom the
victim could not identify, and it proceeded down Bolton
Street toward F Street which runs parallel to Dorchester
Street.  The victim ran to her store and reported the robbery
by telephone to the police.

Shortly after eleven o'clock two automobiles collided at
the intersection of Bolton and F streets.  One of the auto-
mobiles was a gray Chevrolet sedan bearing a Massachu-
setts registration plate with the number P-64728; it was
facing out of Bolton Street and away from Dorchester
Street.  When the police arrived at the scene of the accident

they were unable to find the operator of this automobile. The registration plate which was attached to it had been issued to one Buckley and had been stolen from him prior to the time of the robbery.

One Stephen McNeil testified that shortly after the collision while walking on E Street toward Bolton Street his attention was attracted to three men running down Bolton Street from the scene of the accident; that one of these men (not the defendant) had a lady's black bag in his hand; that one of the others was the defendant; and that the three men entered an Oldsmobile sedan which was parked on E Street, and drove north toward Second Street. The automobile had a Michigan license plate (EA–89–00) and it was registered in the name of the defendant.

The defendant's automobile was observed by the police at 11:21 A.M. on Albany Street proceeding over the Broadway bridge from the direction of South Boston; it was stopped by the police, and the defendant, who was alone, was placed under arrest.

When questioned at the police station, the defendant was informed that his room at 260 Beacon Street, Boston, was going to be searched. He told the police that they would find $350 in the pocket of a sweater in his room. The police made the search and found the $350 and they also found in a drawer the sum of $275 in bills and a ten dollar roll of quarters.[1] The quarters were in a wrapper of a type used by the Federal Reserve Bank.

The distance from the scene of the robbery to the defendant's lodgings on Beacon Street is about two and one half to three miles. Under ordinary traffic conditions it would take twenty minutes to drive that distance via the Broadway bridge. The Commonwealth conceded at the arguments that the defendant would not have had time to drive from the scene to his room prior to his arrest.

The defendant was tried to a jury on an indictment

---

[1] The bills were of the same denomination as those that were stolen from Annie Gavin, namely, $1, $5 and $10; and the sum found, lacking $5, constituted one third of the proceeds of the robbery.

charging robbery and was convicted. The case, having been tried subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, comes here by appeal with numerous assignments of error.

1. The defendant's second assignment of error presents the question whether the defendant was prejudiced by the action of the judge in ordering the case for trial in the circumstances hereinafter stated. The defendant was arrested on July 16, 1954, and Mr. Lehane was retained as counsel shortly thereafter. The indictment was returned on July 29, 1954, and on August 3, 1954, the defendant was arraigned and pleaded not guilty. When the case was called for trial on September 28, 1955, the defendant through his counsel, Mr. Lehane, moved for a continuance on a ground which is not here material and the motion was denied.[1] At that time the judge announced that the trial would commence on the following morning (September 29) at ten o'clock. On the next day (Thursday) when the case was called for trial Mr. Lehane informed the judge that he had been discharged as counsel. The judge then asked the defendant if he had any other counsel in mind and the defendant replied that he would like to get in touch with Mr. Joseph McDonough. Thereupon, at the request of the judge, Mr. McDonough was sent for and upon his arrival in the court room he was appointed to represent the defendant. The judge at the same time appointed Mr. Lehane as associate counsel. The judge said to Mr. McDonough that he assumed that he would want a continuance in order to prepare the case, and Mr. McDonough replied that he would. The judge then stated that he would set the case down for trial on Monday morning. Mr. McDonough informed the court that that would not be convenient as he had an assignment for that day in the Federal court. A protracted colloquy followed in which both counsel, the defendant and the judge participated, which may be summarized as follows: The judge stated to Mr. Lehane that he

---

[1] This was the subject of assignment of error numbered 1. It has not been argued and is treated as waived.

understood the defence had no witnesses and Mr. Lehane stated that that was the fact. Mr. McDonough stated that he would like to have the case proceed on the following day so that he could attend to his assignment in the Federal court. The defendant himself stated that he objected to having the case go forward so speedily. The judge then ordered a jury to be empanelled and the trial was assigned for the following day. To this ruling Mr. McDonough excepted.

We are mindful that "A reasonable opportunity to obtain counsel . . . and to prepare a defence is of the very substance of due process of law." *Jones* v. *Commonwealth,* 331 Mass. 169, 171. But taking into consideration the facts that counsel who had been in the case for more than a year had been appointed associate counsel, that the defence did not propose to call witnesses, and that Mr. McDonough preferred to have the case go forward on Friday in preference to Monday, the judge did not err in ordering the case on for trial. Subject to the constitutional right just alluded to, which we think was not impaired here, the granting of a continuance is discretionary with the judge. *Commonwealth* v. *Klangos,* 326 Mass. 690.

2. The defendant argues that the judge erred in denying his motion for a directed verdict of not guilty (assignment 46); but we are of opinion that the case was rightly submitted to the jury. It could have been found that the defendant was near the scene of the crime when it was committed and that he aided and abetted in the commission of it to an extent sufficient to make him a principal. *Commonwealth* v. *Knapp,* 9 Pick. 496, 516–518. *Commonwealth* v. *Mannos,* 311 Mass. 94, 108–110. *Commonwealth* v. *Lussier,* 333 Mass. 83, 94. The jury could have found that he was seen shortly after the robbery, and not far from the scene of it, running along the street with two other men, one of whom had a lady's black handbag, and that all three got into the defendant's automobile and made their escape. This, together with other evidence which has been summarized above, was sufficient to warrant the submission of the case to the jury.

3. There are some forty-three assignments of error relating to rulings on evidence. A discussion of them all in detail would not be profitable and would greatly prolong this opinion to no purpose. Many of the assignments relate to discretionary rulings which present no questions of law, such as leading questions, recalling of witnesses, repetitious questions, and similar matters. These and some others do not merit discussion.[1] After carefully examining the rulings on evidence we have dealt with such of them as seem to us worthy of discussion.

4. The witness McNeil testified that the defendant was one of the three men he saw running from Bolton Street to E Street shortly after the robbery. He was then permitted to testify subject to objection and exception of the defendant (assignments of error 24 and 25) that he went to the police station on the following Monday where there was a line-up of fifteen men and that he identified the defendant as one of the three men he had seen running on Bolton Street. There is a conflict of authority as to the admissibility of evidence of this sort. But under our own decisions and according to respectable authority elsewhere such evidence is admissible. *Commonwealth* v. *Rollins*, 242 Mass. 427, 429. *Commonwealth* v. *Powers*, 294 Mass. 59, 60–61. See *Commonwealth* v. *Domanski*, 332 Mass. 66, 77–78; *United States* v. *Forgano*, 190 Fed. (2d) 687 (C. A. 2); *People* v. *Slobodion*, 31 Cal. (2d) 555, 559–560; *State* v. *Frost*, 105 Conn. 326, 340–342; Wigmore, Evidence (3d ed.) § 1130. Reason as well as authority supports this view. An identification made in court frequently has little testimonial value as compared with a prior identification made in the circumstances here disclosed and such evidence ought to be admissible to corroborate the identification in court.

5. Another group of assignments of error relate to the admissibility of certain exhibits (assignments 4, 15, 27, 40, and 41). These exhibits were: Two photographs of the defendant's automobile, a strap from the handbag of the

---

[1] Of this sort are assignments of error 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, and 26.

witness Gavin, a pair of nylon stockings, and $275 and a ten dollar roll of quarters found in the defendant's room after the robbery.

The photographs present no problem; they were properly authenticated and were relevant. The strap of the handbag was likewise admissible. It tended to corroborate Gavin's testimony concerning the snatching of her handbag by force.

At the time of his arrest a pair of nylon stockings was found in the defendant's automobile and these were introduced in evidence. It is difficult to see what relevancy this evidence had. But in the circumstances the defendant was not prejudiced. Prior to the introduction of this evidence the arresting officer testified without objection to having found the stockings or a pair like them in the defendant's automobile when the arrest was made. The introduction in evidence of the stockings themselves added nothing of substance to this evidence.

After the defendant was arrested, three police officers made a search of the defendant's room at 260 Beacon Street. One of the officers testified, subject to exception of the defendant, that he found $275 in bills and a ten dollar roll of quarters in a drawer in the defendant's room. The bills and quarters were then introduced as exhibits, subject to the defendant's exceptions. There was no error. There was evidence that the defendant stated after his arrest that the only money in his room was $350 in the pocket of a sweater, which was also found by the searching officers. Since there was evidence that the denominations of the bills comprising the $275 were the same denominations as those given to the witness Gavin by the bank, that she was also given $10 in quarters in a wrapper of the sort used by banks and similar to that found in the defendant's room, and that this money, lacking $5, constituted one third of the proceeds of the robbery, we are of opinion that the evidence objected to was admissible. See *Commonwealth* v. *Salah,* 253 Mass. 549. True, as the Commonwealth concedes, there would

not have been time after the robbery for the defendant to have gone to his room and placed the money there. But, as the Commonwealth suggests, this does not preclude the possibility of it having been left there by confederates of the defendant.

What has been said disposes also of assignments of error numbered 29 to 38, inclusive.

6. Still another group of assignments relate to the admissibility of conversations between certain police officers and the defendant (assignments of error 28, 39, 42, 43, 44, and 45). A police officer, Connerney, was permitted to testify, over the defendant's objection and exception, as to questions put to the defendant at the police station shortly after his arrest and the answers made to these questions by the defendant.[1] This evidence was admissible. The questions for the most part were directed to whether the defendant was in South Boston on the morning of the robbery and his reason for being there. That was a relevant inquiry and it was proper to lay before the jury the defendant's answers. If the jury, as they might, concluded that the answers were false, improbable or evasive, they could treat them as evidence in the nature of an admission. *Commonwealth* v. *Devaney*, 182 Mass. 33, 35–36. *Commonwealth* v. *Granito*, 326 Mass. 494, 500.

Officer Connerney also testified to the following conversation which he had with the defendant at the police sta-

---

[1] Relevant portions of the interrogation and answers were as follows: "Q. Where did you come from? A. Pontiac, Michigan. Q. Are you working? A. No. Q. You have got quite a lot of money out here, how do you account for it? A. I have been in Michigan quite a while, I have been in the automobile game, I am only supporting myself, I make good money, and I save my money. Q. How long have you been in Boston? A. I came here about May 1st. Q. Have you got a Boston address? A. Yes, I am living at 260 Beacon St. Q. Were you there last night? A. Yes, I came in a little after-midnight and went to bed. Q. What time did you leave the house this morning? A. Sometime between 9:30 and 10 o'clock. Q. Were you in South Boston today? A. Yes. Q. What did you do over there? A. I went over to Benny's Truck Terminal. Q. Did you see the fellow you went over to see? A. No. Q. Why not? A. A truck fellow, I asked a fellow if he was working, and he told me not. Q. What is the fellow's name? A. I don't know the men over there, he was one of the drivers. Q. I am going over to your room, have you got anything in that room? A. I have got clothes . . . [and] $350 in a pocket of a sweater coat hanging in the closet."

tion shortly after he and two other officers had returned from a search of the defendant's room. Connerney: "I was over to your house and I found money in the sport coat, $350. But you didn't tell me about the money in the desk." The defendant: "What money in the desk?" Connerney: "I found a sum of money in the desk." The defendant: "No, you didn't." Connerney: "I have got some news for you, $280." The defendant: "I don't know about any money in the desk. Any money you found there is yours." This conversation was corroborated by Officer Barry. And a similar conversation was introduced through Officer Rush. All of this evidence was excepted to by the defendant.

It is settled that extrajudicial accusatory statements made in the presence of a defendant are not admissible as evidence against him where the defendant has denied the accusations. To permit such statements to be introduced would sanction the admission of hearsay evidence. Where, as here, the defendant is under arrest, neither his silence nor his denial affords any basis for admitting such statements. They are admissible only if he admits them or gives an equivocal reply which has the flavor of an admission. *Commonwealth* v. *Trefethen*, 157 Mass. 180, 197–200. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 313. *Commonwealth* v. *Kosior*, 280 Mass. 418, 422–423. *Commonwealth* v. *Polian*, 288 Mass. 494, 496. *Commonwealth* v. *Twombly*, 319 Mass. 464. *Commonwealth* v. *Ellis*, 319 Mass. 627, 630. The defendant argues that under this principle the foregoing evidence was inadmissible. We do not agree. The substance of this evidence added nothing to what had already been testified to by the officers questioning the defendant, with the exception of the defendant's denial of knowledge of the money. This was not prejudicial.

A police stenographer, Godfrey, testified that he recorded a conversation which took place at the police station between Sergeant Stapleton and the defendant, and he was permitted to read the following portion of it from his notes, subject to the defendant's exception. "Q. You didn't

hold this woman up? A. No, sir. Q. These were found in your pocket. (Showing ladies' short silk stockings.) A. No, sir. Q. The detectives said they were. A. They are mistaken." It is not apparent to us why this evidence was admitted. Where the defendant's answers consisted of denials it would have been better to have excluded it. But we do not think that this was harmful to the defendant. None of the questions contained accusatory statements of the sort held to be objectionable in the cases cited above.

Another police stenographer, Krause, testified that he was present at the police line-up when McNeil identified the defendant and recorded the conversation between McNeil and a police officer. In substance Krause testified that McNeil identified the defendant and stated that he was one of a group of three men whom he saw running on Bolton Street shortly after the robbery; that one was carrying a bag; and that they got into a blue Oldsmobile automobile bearing registration number EA–89–00. At the conclusion of McNeil's statement the police officer turned to the defendant and said, "Did you hear what this fellow said?" and the defendant replied that he had. The following question was then put: "What have you got to say about that?" And the defendant answered "That is his opinion." There was no error. The answer was not an unqualified denial, and might be regarded as somewhat equivocal. *Commonwealth* v. *Hebert*, 264 Mass. 571, 578. Moreover, all of this evidence, with the exception of the defendant's reply, came in through McNeil at the trial. Hence this evidence was merely cumulative. The judge in his charge gave careful and accurate instructions as to the effect of statements made in the presence of the defendant.[1]

---

[1] "Again there is a question of a certain statement here, alleged to have been made by the defendant while in confinement, under arrest. The law is that a person under arrest is not obliged to say anything. He can be charged with a crime, and he doesn't have to say a single word. If he says nothing at all, or if he makes a flat denial . . . all matters which he denied or to which he failed to respond, are not admissible for your consideration. But if the person under arrest chooses to make a reply and such reply is ambiguous or equivocal, the equivocal answer is admissible as an admission. If an innocent person is charged with an offence the natural impulse of that person is to

We think that this instruction adequately protected the rights of the defendant with respect to both this statement and the other statements made in the defendant's presence which are the subject of the assignments of error discussed above.

*Judgment affirmed.*

deny it. So as to apply to these cases here, you heard the testimony, as I recall it, but it is for you to say. The witness Mr. McNeil recited or said something in the presence of this defendant at the police station or in a line-up which, as I recall it, but again it is for you to say that he, the defendant Locke, was the fellow that he saw running up Bolton Street at the corner of E Street, that same person got into a car. To which the defendant said, 'That is his opinion.' It is for you to say whether that was a denial or an ambiguous, equivocal, evasive statement. If it was a denial in your judgment you will not consider that evidence as any evidence against the defendant. On the other hand, if you determine it to be ambiguous or equivocal or an evasive answer, you may consider it as an admission.''