## COMMONWEALTH vs. JOSEPH P. ANDRADE.

Plymouth. September 12, 1979. — November 13, 1979.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Evidence,* Admissions and confessions, Photograph. *Identification.*

Evidence at a hearing on a motion to suppress statements made by a seventeen year old defendant with only a fifth-grade education warranted a finding that the defendant had voluntarily, knowingly and intelligently waived his Miranda rights. [654-656]

Where defense counsel at a criminal trial opened up the subject of a witness's pretrial photographic identification of the defendant in order to undermine the credibility of the witness's in-court identification, there was no error in subsequently permitting the Commonwealth to probe into the photographic identification procedure for the purpose of supporting the witness's credibility. [656-657]

At a criminal trial, evidence warranted a finding that a pretrial photographic identification procedure was not impermissibly suggestive. [657-658]

At a criminal trial, there was no error in the circumstances in admitting in evidence mug shots of the defendant, and they were sufficiently sanitized by covering the writings and numbers with tape. [658-659]

INDICTMENT found and returned in the Superior Court on May 25, 1973.

A pretrial motion to suppress evidence was heard by *Leen,* J., and the case was tried before him.

The case was submitted on briefs.

*Robert Snider* for the defendant.

*William C. O'Malley,* District Attorney, *& Rosemary Ford,* Assistant District Attorney, for the Commonwealth.

KASS, J. A jury returned a verdict of guilty against the defendant Joseph P. Andrade (Andrade) on indict-

ments charging him with unarmed robbery, assault and battery, and unauthorized use of a motor vehicle. Andrade attacks his conviction of unarmed robbery (the other convictions were placed on file) on the grounds that: (1) a pretrial confession should have been suppressed; (2) evidence of an impermissibly suggestive photographic identification procedure was received in evidence; and (3) mug shots of Andrade and his brother should not have gone to the jury, and, in all events, were inadequately sanitized. We conclude that there was no error.

1. *Validity of the pretrial confession.* The crimes occurred in Wareham on the evening of April 8, 1973; the victim was a cab driver, one Demers. His assailant was a passenger who demanded Demers' money, received it, and thereupon knocked Demers senseless and dragged him from his cab.

Three days later, on April 11, 1973, a detective of the Wareham police department, Jack B. Russell, was engaged in an investigation involving a break into a school. The trail of that inquiry led to the defendant and his brother, both of whom were arrested that day and detained at the Wareham police station. While thus at the police station, Detective Russell told Andrade he wished to question him about the taxicab matter and gave him all the elements of a Miranda warning. The motion judge at the suppression hearing found that Andrade understood the warning. Detective Russell told Andrade that the taxicab had been found 100 yards to the rear of his home; that a black youth with a "short afro" had been seen driving the cab after the robbery of Demers; that the car had been dusted for fingerprints; and that his picture would be put in a mug book to be taken to Demers and viewed by him. Asked by Detective Russell if he had anything to say, Andrade said, "I done it."

At that point Detective Russell called in Sergeant Barrett of the Wareham police, to whom he said that

Andrade wanted to make a statement. Sergeant Barrett read the Miranda warning to Andrade from a card. The latter said he understood his rights and gave a statement admitting the crimes, which Detective Russell wrote down in longhand and to which Andrade subscribed by his signature.

The contentions which Andrade raised at the suppression hearing, and which he presses on appeal, are that the coercive environment which surrounded the interrogation and his limited education (not beyond the fifth grade) precluded an intelligent and voluntary waiver of his Miranda rights. See *Miranda* v. *Arizona*, 384 U.S. 436, 478-479 (1966). If an accused person gives a statement while in custody, a heavy burden rests on the prosecution to show that the defendant voluntarily, knowingly and intelligently waived his Miranda rights. *Commonwealth* v. *Hosey*, 368 Mass. 571, 576 (1975). *Commonwealth* v. *Jackson*, 377 Mass. 319, 325 (1979). Courts indulge every reasonable presumption against waiver of fundamental constitutional rights. *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). *Commonwealth* v. *Hosey*, *supra* at 577. *Commonwealth* v. *Taylor*, 374 Mass. 426, 436 (1978). Any evidence that the defendant was "threatened, tricked or cajoled into a waiver will . . . show that the defendant did not voluntarily waive his privilege." *Miranda* v. *Arizona*, 384 U.S. at 475-476. *Commonwealth* v. *Dustin*, 373 Mass. 612, 614 (1977), cert. denied, 435 U.S. 943 (1978). When the defendant is a minor — Andrade was seventeen — courts must proceed with special caution. *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972).

Our examination of the record persuades us that the trial judge carefully considered the applicable principles. He chose to disbelieve, as he was entitled to, Andrade's claim, denied by Detective Russell, that Russell had offered Andrade help on the breaking and entering charge in exchange for a confession on the assault and battery case. Although Andrade had only a fifth-grade educa-

tion, the judge had observed him and had concluded that Andrade "understood his rights and everything that was said to him or that he said in the Wareham police station on April 11, 1973." Age alone is not a controlling factor. Cf. *Commonwealth* v. *Cain,* 361 Mass. at 229. As to threats, tricks or cajolery, the judge expressly found that none had been brought into play by Detective Russell. The detective's recital of the evidence which had accumulated linking Andrade to the assault on Demers was factual and, therefore, did not trick the defendant into a confession by a misrepresentation. Compare *Commonwealth* v. *Jackson,* 377 Mass. at 327.

Contrary to the defendant's assertion, there is no requirement that a waiver be written.[1] *North Carolina* v. *Butler,* 441 U.S. 369 (1979). *Commonwealth* v. *Robinson,* 7 Mass. App. Ct. 600, 603 (1979).

We are of the opinion that the judge's finding on the voluntariness of the waiver of the right to remain silent ought not to be disturbed. In coming to this determination we have applied the standards set out in *Commonwealth* v. *Meehan,* 377 Mass. 552, 557 (1979), that questions of credibility are for the judge who hears the motion; that his subsidiary findings are to be respected if supported by evidence; and that the judge's conclusion as to waiver is entitled to substantial deference.

2. *Suggestiveness of the pretrial court identification.* Two days after the attack on Demers, Detective Russell visited him in the hospital and showed him a mug book containing pictures of approximately seventy persons who had been arrested in Wareham. Demers selected, as resembling his assailant, a photograph of the defendant's brother. On the next day Detective Russell returned to the hospital with the same mug book into which he had, in the meantime, inserted Andrade's pic-

---

[1] Both parties concede that the presence of a written confession does not preclude inquiry into whether the waiver was voluntary.

ture next to that of his brother. Otherwise, the book was unaltered. Demers identified Andrade as the assailant.

At trial, the Commonwealth contented itself with an in-court identification by Demers of the defendant as the man who had robbed and beaten him. "Even if the pretrial identification were unnecessarily suggestive, the subsequent identification at trial would be excluded 'only if the photographic identification [were] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Commonwealth* v. *Venios*, 378 Mass. 24, 30 (1979), quoting from *Simmons* v. *United States,* 390 U.S. 377, 384 (1968). No mention of the out-of-court identification occurred until defense counsel began to cross-examine Demers about his identification of Andrade from the mug book. In its cross-examination the defense sought to undermine the credibility of Demers' in-court identification. The defendant's counsel thus opened up the subject of the use of the mug book and the accuracy of Demers' pretrial identification. Having done so, the defense cannot protest the Commonwealth's subsequent probing into the photographic identification procedure for the purpose of supporting the credibility of its witness. *Commonwealth* v. *Taylor,* 327 Mass. 641, 648-649 (1951). The defendant's counsel took "a calculated, informed risk" in getting into the pretrial identification and "[t]here is no unfairness in holding the defendant to the consequences of that choice." *Commonwealth* v. *Torres,* 367 Mass. 737, 741-742 (1975).

Nor was the photographic array impermissibly suggestive on the basis of the criteria and procedures described in *Commonwealth* v. *Murphy,* 362 Mass. 542, 544 (1972), *Commonwealth* v. *Chase,* 372 Mass. 736, 740-741 (1977), and *Commonwealth* v. *Nolin,* 373 Mass. 45, 51 (1977). The second showing to Demers of the same mug book with Andrade's picture added and the placement of it next to a picture of his brother was scarcely akin to a single picture identification, a proce-

dure which is disfavored, *Commonwealth* v. *Barnett,* 371 Mass. 87, 91-92 (1976), but not of itself an adequate ground for exclusion. *Commonwealth* v. *Nolin,* 373 Mass. at 51. Indeed, the pretrial photographic identification here was similar to that regarded as acceptable in *Commonwealth* v. *Funderberg,* 374 Mass. 577, 582 (1978). Demers, in fact, testified that he thought he was looking at a different book of pictures. We also note the procedure passed the tests of reliability set forth in *Commonwealth* v. *Gordon,* 6 Mass. App. Ct. 230, 236 (1978).

3. *Whether the mug shots should have gone to the jury and whether they were adequately sanitized.* The photographs of Andrade and his brother which Demers had picked out of the mug book were offered during the prosecution's rebuttal of the defense's attack on Demers' capacity to make an identification of Andrade. In those circumstances, the admission in evidence of the mug shots themselves was justified. *Commonwealth* v. *Washburn,* 5 Mass. App. Ct. 195, 196-197 (1977). As was the case in *Washburn,* at 197, the judge ordered that writing and numbers beneath the faces be covered with tape and this was sufficient sanitizing. While the method of sanitizing was of a kind criticized as artless in *United States* v. *Fosher,* 568 F.2d 207, 215 (1st Cir. 1978), the use of mug shot photographs in that case was far more troublesome because the pictures were introduced by the prosecution on direct examination and comments of the prosecutor and the judge accentuated the source of the photographs. In the instant case the judge gave instructions to the jury which had a further sanitizing effect. It is also significant in the present case that Detective Russell testified that he himself took Andrade's pictures after Andrade was arrested, thus effectively neutralizing inferences the jury might have drawn that Andrade had perhaps been caught before in the toils of the law. No doubt it is desirable that the classic full face and profile poses of mug shots be separated and other tell-tale signs (numbers) excised by judicious use of scissors. It is best

to do so out of the jury's sight. On the facts of the case before us, however, the use of slightly less subtle means was well short of error.

*Judgment affirmed.*