COMMONWEALTH vs. STEPHEN F. BLANEY, JR.

Norfolk.   March 2, 1982. — November 17, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification.   Evidence,* Photograph, Composite drawing, Judicial
    discretion.

A defendant charged with armed robbery could not have been prejudiced
    at his trial by the admission in evidence of a composite drawing pre-
    pared by the victim of the robbery working with a kit consisting of a
    variety of transparent overlays and with the assistance of a police de-
    tective, where this evidence was merely cumulative of the victim's in-
    court identification of the defendant and of his selection of the defend-
    ant's photograph from a photographic array which was admitted as an
    exhibit.   [630-633]   LIACOS, J., concurring.   O'CONNOR, J., dissenting.
At the trial of an indictment for armed robbery the judge did not err in re-
    fusing to allow defense counsel to ask a witness whether the
    defendant's hairline in late November, 1979, and February, 1980, was
    the same as that depicted on a composite drawing which had been ad-
    mitted in evidence, where the witness could not testify regarding the
    defendant's hairline at a time close enough to the robbery, which
    occurred in December, 1979, to be clearly relevant.   [633-634]
At a criminal trial no prejudice appeared in the denial of the defendant's
    motion seeking to limit cross-examination of his prospective alibi wit-
    nesses.   [634]
In the circumstances of a robbery trial, in which the identifying witness
    testified to having seen both a frontal view and a profile view of the
    robber during commission of the crime, the judge did not err in refusing
    to order that the double-pose ("mug shot") photographs in the array of
    photographs from which the victim had identified the defendant be
    severed and that only the front view be shown to the jury.   [634-637;
    639-640]
Discussion of the proper use at trial of evidence relating to identification
    of defendants by means of photographs obtained from files maintained
    by law enforcement officials.   [637-638]

INDICTMENT found and returned in the Superior Court
Department on April 14, 1980.

The case was tried before *Young, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

*John P. Courtney* for the defendant.

LYNCH, J. The defendant, Stephen F. Blaney, Jr., was convicted of armed robbery after a jury trial. G. L. c. 265, § 17. The Appeals Court reversed his conviction, holding that the trial judge committed error by failing to order that a double-pose (full face and profile), "mug shot" photograph of the defendant be severed before being introduced in evidence. *Commonwealth* v. *Blaney*, 12 Mass. App. Ct. 730 (1981). We granted the Commonwealth's application for further appellate review. G. L. c. 211A, § 11. We affirm the judgment of conviction.

1. *Facts.* On December 9, 1979, two men robbed the Andrews Pharmacy in Wellesley and escaped with drugs and money. Gary Manzo, the pharmacist-manager, observed one of the robbers briefly from at least four separate angles. He later identified the defendant as the person he observed during the robbery.

At about 6 P.M., Manzo was in the front of the store when he noticed a man standing at the pharmacy counter in the rear. As he approached the man to offer sales assistance, Manzo had a diagonal view of the man's profile from the rear. When Manzo drew near, the robber pulled a gun from his jacket, pointed it at Manzo's side and ordered Manzo to lie face down behind the counter.

The robber demanded dilaudid, a controlled substance. As Manzo rose to go to the safe where controlled substances were stored, he caught another glimpse of the robber's face. Manzo and the robber crouched before the safe. The robber removed two canisters of drugs from the safe, and Manzo again glanced at his face. The robber demanded cash. Manzo rose to go to the cash register, looking at the robber's profile as he rose. The robber followed Manzo to the register, took the money, and ordered Manzo to lie on the floor.

The robber called out to his accomplice, who had been holding a second pharmacy employee[1] at gunpoint, and both men left the store. Manzo looked over the counter behind which he was lying and caught a final profile view of the man who had taken the drugs and the money from him; Manzo then crouched back behind the counter.

After a few moments, Manzo telephoned the Wellesley police department. When officers arrived, Manzo described his assailant as follows: slight build, almost six feet in height, medium length, darkish brown-black hair parted in the middle and brushed back at the sides, a prominent nose, a moustache, and acne scars. Three hours after the robbery, Manzo (with the aid of a police officer) made a composite drawing of the man he had described earlier. It was not until January 5, 1980, that Manzo returned to the police station and looked through an array of photographs from which he selected a double-pose photograph of the defendant. At trial, all the photographs in the array (including the defendant's), and the composite drawing were introduced in evidence by the Commonwealth through Manzo.

2. *The composite drawing.* Manzo made the composite drawing with the aid of a police officer who had been trained in the use of an "Identikit." This tool consists of 600 transparent overlays of facial features. A witness first selects a facial foundation, and then chooses features from the kit which most closely resemble those of the person the witness is attempting to describe; the witness tries different combinations of overlays until he is satisfied that the sketch resembles the person being described.

The judge admitted a copy of the composite drawing made by Manzo, over the defendant's general objection. The Appeals Court concluded that admission of the drawing was not error. There is no evidence that the Identikit composite was in any way suggested by the police officer, or

---

[1] This employee, a high school student who worked part time in the pharmacy, did not observe the robber who took the money and drugs from Manzo clearly enough to identify him as the defendant.

that it was anything other than the sole product of the witness's perception of what the perpetrator of the crime looked like.[2]

The defendant relies on *Commonwealth* v. *McKenna*, 355 Mass. 313, 326-327 (1969), in which the court found error in the admission of a similarly made composite drawing. See *id.* at 327 (the drawing "could have been used to refresh [the maker's] recollection but it had no standing as evidence of the truth or accuracy of the matter contained in it"). On the basis of this and a number of other errors, the court reversed McKenna's convictions.

"An extrajudicial identification made by a witness may be offered in evidence for three possible purposes: (1) for corroboration; (2) for impeachment; or (3) as substantive evidence of an identification, having probative value." *Commonwealth* v. *Vitello*, 376 Mass. 426, 458 (1978). *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 408 (1978).

"This court . . . has previously concluded that extrajudicial identifications are not always limited to the purpose of impeachment; rather, even when a witness is unable or unwilling to make an in-court identification, out-of-court identifications may be admitted as substantive evidence of guilt as long as the defendant's due process and confrontation rights are satisfied. *Commonwealth* v. *Swenson*, 368 Mass. 268, 272 n.3 (1975). *Commonwealth* v. *Torres*, 367 Mass. 737, 738-739 (1975). See *Commonwealth* v. *Howard*, 4 Mass. App. Ct. 476 (1976); *Commonwealth* v. *Day*, 4 Mass. App. Ct. 831 (1976). See also *Commonwealth* v. *McLellan*, 351 Mass. 335 (1966); *Commonwealth* v. *Nassar*, 351 Mass. 37, 42 (1966); *Commonwealth* v. *Locke*, 335 Mass. 106, 112 (1956). See generally Fed. R. Evid. 801(d)(1)(C); 4 J. Weinstein & M. Berger, Evidence par. 801(d)(1)(C)[01] (1977)." *Commonwealth* v. *Fitzgerald, supra.* In

[2] Of course the preparation of an Identikit composite, as in any other method of identification, could be so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Commonwealth* v. *Mobley*, 369 Mass. 892, 895 (1976). *Simmons* v. *United States*, 390 U.S. 377, 384 (1968).

this case, Manzo identified the defendant in court. We have held that extrajudicial statements are admissible to corroborate witnesses' in-court identifications[3] and that, when such corroborative testimony is not offered to prove the truth of the matter asserted (that the person depicted in the drawing committed the crime), it is not hearsay. See *Commonwealth* v. *Repoza,* 382 Mass. 119, 129-130 (1980).[4] Moreover, testimony concerning the extrajudicial identification of a photograph has been held admissible, not only as corroboration of a witnesses' in-court testimony, but also as substantive evidence of guilt, consistent with the theory that an identification made soon after the event is generally more reliable than an identification made at a much later date. *Commonwealth* v. *Vitello, supra* at 459. See P.J. Liacos, Massachusetts Evidence 170-171 (5th ed. 1982), and cases cited. However, many courts have treated extrajudicial identification made by composite as inadmissible hearsay. See Annot., 42 A.L.R.3d 1217, 1220 (1972). Indeed, this court has held that such evidence is at best a recording in graphic form of out-of-court statements, with no standing as evidence of the truth or accuracy of the matter contained in it. *Commonwealth* v. *McKenna, supra.*

It is not necessary for us to resolve, on this occasion, what may be regarded as inconsistencies between the decisions in

---

[3] The defendant argues that the composite could not have been offered as corroboration because Manzo did not identify the defendant in court until after the composite was offered. As the defendant made clear in his opening statement, the central issue in the case involved identification. The timing of the introduction of evidence corroborative of Manzo's identification was within the discretion of the trial judge.

[4] Under the Proposed Massachusetts Rules of Evidence, the composite drawing, if it is a "statement," would not be hearsay. Proposed Mass. R. Evid. 801(d)(1)(C) (statement is not hearsay if declarant testifies at trial and statement is one of identification of a person made after perceiving him); cf. Fed. R. Evid. 801(d)(1)(C) (same). See also *United States* v. *Moskowitz,* 581 F.2d 14 (2d Cir.), cert. denied, 439 U.S. 871 (1978) (composite not hearsay under Federal rules where maker testifies); *State* v. *Ginardi,* 111 N.J. Super. 435 (1970) (composite admitted under State statute allowing admission of prior identifications); *State* v. *Lancaster,* 25 Ohio St. 2d 83, 91-92 (1971) (same).

*Commonwealth* v. *Repoza, supra,* and *Commonwealth* v. *Vitello, supra,* on the one hand, and *Commonwealth* v. *Mc-Kenna,* on the other. The admission of the composite drawing of the defendant could not have prejudiced him. As we hold, *infra,* photographs of the defendant properly were admitted. In addition to this evidence, the victim identified the defendant in open court. In these circumstances, the defendant could not have been prejudiced by the Identikit evidence. This evidence was only cumulative, and could have had no significant impact on the jury who not only saw the defendant identified in court, but also took with them to the jury room actual photographs of the defendant from which a prior identification had been made. See *Commonwealth* v. *Pickles,* 364 Mass. 395, 400 (1973).

We, therefore, hold that the admission of the composite drawing does not require the reversal of the defendant's conviction.

3. *Exclusion of testimony.* A physician who had seen the defendant on several occasions, including during late November, 1979, and February, 1980, testified to his observations of the defendant's build and complexion in 1979. The judge did not allow defense counsel to ask this witness whether the defendant's hairline, in 1979, resembled that depicted on the composite drawing.

The judge was prepared to assume that the defendant's build and complexion had not undergone major changes during the weeks between the doctor's last observation of the defendant in 1979, and the date of the commission of the robbery; the appearance of the defendant's hairline, however, could have been altered easily by a haircut. Since the doctor could not testify regarding the defendant's apparent hairline on the date of the commission of the robbery, or at any time close enough to that date to be clearly relevant, the judge excluded this testimony. He committed no error. Although it might have been better to admit the testimony for whatever probative value it might have had, we cannot say that to exclude it was error. Whether evidence is legally relevant is a decision generally left to the trial judge. *Com-*

*monwealth* v. *Chasson,* 383 Mass. 183, 187 (1981), and cases cited.

4. *The defendant's motion in limine.* By means of a motion in limine, the defendant sought to limit the Commonwealth's cross-examination of any potential alibi witnesses. Specifically, the defendant sought to prevent the Commonwealth from inquiring into how and by whom the witnesses were first questioned and from inquiring about "prior testimony or failure to testify at any occasion." The judge denied the defendant's motion. In this appeal, the defendant argues that the denial of his motion prejudiced his right to call witnesses on his behalf.

Defense counsel mentioned that two potential witnesses might place the defendant some distance away from the scene of the crime at a critical time. Counsel later acknowledged that the testimony of one of these potential witnesses would have been of no use to the defendant: the defendant was not at her house on the evening of the robbery. With respect to the second potential witness, the record does not show either that he was ever located, or what his testimony might have encompassed, had it been offered. In any event, defense counsel conceded that if the defendant took the stand (which he did not), he would testify that he did not remember where he was on the day of the robbery. Even if we assume that the denial of the defendant's motion was error, the defendant was not prejudiced by that denial.

5. *Admission of unsevered mug shots.* Within one month of the robbery, Manzo picked the defendant's photograph from an array of eighteen black and white photographs shown to him by a Wellesley police officer. The array consisted of two single frontal-pose photographs and sixteen double-pose photographs. The defendant's photograph was of the "classic full-face and profile type," *Commonwealth* v. *Whitehead,* 379 Mass. 640, 660 n.24 (1980), commonly known as a "mug shot." See *United States* v. *Fosher,* 568 F.2d 207, 208 n.2 (1st Cir. 1978). Five of the other double-pose photographs in the array have what obviously appears to be a height chart in the background with a series of num-

bers running down the right-hand side of each pose. These numbers can be translated easily into a height-in-inches figure.

Although the defendant filed pretrial motions to suppress evidence and for other relief, he did not challenge the array as suggestive at that time. In his opening statement, however, defense counsel emphasized that the central — indeed the only — issue in the case involved Manzo's identification of the defendant.[5] The Commonwealth previously had informed defense counsel and the judge that it intended to introduce the entire array to corroborate Manzo's identification of the defendant. Immediately after defense counsel's opening, the judge held a bench conference at which he ruled that the photographs could be introduced, but only after they were "sanitized" by covering notations on the back with tape, and by cropping number placards from the bottom of certain of them. Defense counsel objected, stating that "it would be virtually impossible . . . to effectively sanitize these photographs" sufficiently to prevent their introduction from prejudicing the defendant. He argued further that the prejudicial effect of the photographs outweighed their probative value and that, since he did not intend to challenge the fairness of the array, it was not necessary for the Commonwealth to introduce the photographs to demonstrate that the array was fair. The judge disagreed. He ruled that the photographs, if cropped and taped as he had ordered, could be admitted because, where an array is "scrupulously fair, it is important evidence to corroborate identification."

Thereafter, defense counsel requested the judge to order that the frontal and profile views of the double-pose photo-

---

[5] Defense counsel stated: "The question in this case is essentially one thing — do they have the right man. I suggest to you that [the defendant] did not go into the pharmacy on that day. What happened here is simply a very common experience of misidentification. Mr. Manzo is simply in error." He concluded, "I suggest that at the conclusion of all the evidence, you will be able to decide that, in fact, they have the wrong man in this case."

graphs be severed, and that the profile views not be shown to the jury. The judge denied this request, stating that the result of severing the photographs "would be to show the witness on the stand something different than what he saw in his actual picking out of the photo."

During the Commonwealth's direct examination of Manzo, the photographic array was introduced in evidence. In this case there was little likelihood that the jury would draw any inferences adverse to the defendant from the fact that the police had these photographs in their possession. The only evidence from which the jury could have inferred that the picture of the defendant selected by Manzo from the array had come into the possession of the police officers prior to the defendant's arrest on the robbery charge, for which he was being tried, was a statement elicited by defense counsel in cross-examining Manzo.[6] The judge sought to limit any harm to the defendant from this testimony by instructing the jury that no inference unfavorable to the defendant was to be drawn from the possession by police officers of the defendant's photograph.[7]

The Appeals Court concluded, on the basis of statements in several of this court's opinions, that the judge committed reversible error in refusing to order that the double-pose photographs in the array be severed before being shown to the jury. See *Commonwealth* v. *Blaney*, 12 Mass. App. Ct. 730, 733-735 (1981), and cases cited; *Commonwealth* v. *Lockley*, 381 Mass. 156, 165-166 (1980); *Commonwealth*

---

[6] DEFENSE COUNSEL: "[The Wellesley police officer] said to you, 'You have to be absolutely sure or I won't prosecute this case'?"

THE WITNESS: "That's exactly right."

DEFENSE COUNSEL: "'We won't even make an arrest unless you say you're sure,' is that correct?"

THE WITNESS: "Right."

[7] The judge instructed the jury as follows: "You cannot draw any inference against [the defendant] . . . if you infer then that the police . . . at that time had a photograph of [the defendant]. You can't draw any inferences against him simply because the police had his photograph. The police departments have pictures of people for many different reasons, and you cannot speculate on the fact, if you came to believe it was a fact, that they had a picture of [the defendant]."

v. *Whitehead,* 379 Mass. 640, 659-660 (1980); *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 309 (1979). The Appeals Court's decision created, in effect, a rule requiring severance of all double-pose mug shot photographs in every case in which the Commonwealth seeks to introduce such photographs in evidence. A rule requiring severance in every case is not a reasonable response to the problems created by the use of mug shots as evidence during trial. In the case before us, the judge did not err in refusing to order that the double-pose photographs in the array be severed and only the full-front poses be shown to the jury.

In general, the Commonwealth may not reveal to the jury a defendant's prior arrests or other misconduct resulting in contact with law enforcement officials. *Commonwealth* v. *Bishop,* 296 Mass. 459, 461-462 (1937). See *Commonwealth* v. *Turner,* 371 Mass. 803, 809-810 (1977). Neither may the Commonwealth show that a defendant has committed a crime on a prior occasion for the purpose of creating an inference of his guilt of the crime charged. *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979), and cases cited. When a defendant takes the stand, the Commonwealth may impeach his credibility with respect to his denial of guilt by introducing evidence of prior convictions, but only if those convictions are properly authenticated and meet other statutory criteria. G. L. c. 233, § 21. See *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 712-715 (1974); Proposed Mass. R. Evid. 609.

Viewed in the light of this statutory and decisional framework, the use at trial of evidence relating to identification of defendants by means of photographs obtained from the files maintained by law enforcement officials poses special problems. "It is a matter of fairly common knowledge that the central photographic files maintained by police do not . . . contain the likenesses of any save those who have had some contact with criminal law." *Commonwealth* v. *Gibson,* 357 Mass. 45, 48-49 (1970). *Commonwealth* v. *Nassar,* 351 Mass. 37, 43 (1966). "There is risk that any use in evidence of photographs of the double type ordinarily used in police

identification files will suggest to the jury that the defendant may have a prior criminal record." *Commonwealth* v. *Gerald,* 356 Mass. 386, 388 (1969). Accordingly, the decisions of this court have required judges and prosecutors to use reasonable means to avoid calling the jury's attention to the source of the photographs used to identify the defendant. *Id. Commonwealth* v. *Lockley, supra* (citing *United States* v. *Fosher,* 568 F.2d 207 [1st Cir. 1978], with approval). *Commonwealth* v. *Whitehead, supra. Commonwealth* v. *Rodriguez, supra. Commonwealth* v. *Nassar, supra.*

In most cases, such reasonable means will include those taken by the trial judge and the prosecutor in this case: cropping the photographs to remove the identification placards often worn by the subjects of the photographs, and covering securely any notations on the photographs which might reveal their origins.[8] In addition, prosecutors should avoid any reference in direct or cross-examination to the source of the photographs in the array; the prosecutor in this case made no such reference. A jury instruction such as that given by the judge in the instant case may be appropriate when the jury have been exposed to evidence from which they could infer that the defendant had a prior criminal record. Finally, severance of the frontal and profile views of double-pose mug shots may be reasonable in certain circumstances.[9] This court has never held, however, that the admission in evidence of unsevered double-pose mug shots is sufficient, standing alone, to constitute reversible error. Cf. *Commonwealth* v. *Rodriguez,* 378 Mass. 296 (1979) (judgments of conviction reversed because of several material errors, including refusal to sever and otherwise "sanitize" mug shot of defendant and refusal to instruct jury regarding defendant's acquittal on charges arising out of incident which resulted in police possessing his photograph).

---

[8] This "sanitizing" of the photographs is best accomplished out of sight of the jury. See *Commonwealth* v. *Cobb,* 374 Mass. 514, 523 (1978).

[9] For example, a refusal to sever frontal and profile views would be unreasonable if the witness who identified the defendant saw only his profile during the commission of the crime. In that case, the frontal-view photograph would not be relevant and should be excluded.

In any event, it was not error for the judge to refuse to require that the photographs be severed in this case. Gary Manzo, the chief prosecution witness, caught several glimpses of the robber's profile; the defendant's request to have the profile and frontal views of the mug shots severed and the profile views excluded from evidence properly was denied. Second, defense counsel did not request that the mug shots be severed after the judge refused to exclude the profile photographs from evidence. Third, the judge took reasonable steps, short of severing the mug shots, to prevent their source from becoming apparent to the jury. Fourth, the prosecutor carefully refrained from indicating the source of the photographs; defense counsel supplied the information from which the jury might infer that the law enforcement officials possessed the defendant's photograph as a result of his prior encounters with the criminal justice system. Finally, the judge gave a limiting instruction. "We presume, as we must, that a jury understands and follows limiting instructions . . . ." *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981).[10]

It is, of course, preferable that photographs introduced in evidence be purged of any characteristics which might lead the jury to infer that the defendant had been involved in any prior misconduct. Where, as here, it is not reasonably possible to "sanitize" completely photographs which must be introduced, the jury are best left with the impression that any photographs used to identify the defendant were taken after his arrest on the charges for which he is being tried. See *Commonwealth* v. *Andrade*, 8 Mass. App. Ct. 653, 658-659 (1979); *Commonwealth* v. *Parry*, 1 Mass. App. Ct. 730, 736-737 (1974). Defense counsel's questions may have precluded this possibility. In these circumstances, we think that the judge employed every reasonable means to limit any prejudice to the defendant which might have resulted

---

[10] Even if we assume that introduction of unsevered mug shots constituted error, the use of limiting instructions "usually renders any error in the introduction of prejudicial evidence harmless." *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981).

from the introduction of his mug shot in evidence. The judge did not abuse his discretion.

*Judgment of the Superior Court affirmed.*

LIACOS, J. (concurring). I join the court in the result it reaches in this case. As to the composite drawing, I agree with the court that "[t]he admission of the composite drawing of the defendant could not have prejudiced him" (*supra* at 633), in light of the other identification evidence presented to the jury. In my view, however, the analysis of the problems inherent in the use of such composites, stated by Justice O'Connor in his dissent, is sound. I also agree with him that "composite drawings should be governed by the hearsay rule, and should only be admissible for purposes of impeachment or rehabilitation" (*infra* at 643). Since I am not persuaded that the error in the admission of this evidence was prejudicial, or that other reversible error is shown on this record, I agree that the conviction should be affirmed.

O'CONNOR, J. (dissenting). The court does not decide whether admission in evidence of a composite drawing of the assailant was error, and concludes that, in any event, the defendant was not prejudiced. I believe that admission of the composite drawing was harmful error, requiring reversal.

Extrajudicial statements, including statements identifying a photograph as that of an assailant, may be admitted to impeach a witness. *Commonwealth* v. *Swenson*, 368 Mass. 268, 274 (1975). In addition, extrajudicial statements of a witness which are consistent with the witness's testimony may be admitted to rehabilitate the witness after he has been impeached by a claim of recent fabrication. *Commonwealth* v. *Lacy*, 371 Mass. 363, 370-371 (1975). Such statements are not inadmissible as hearsay because they are not offered to prove the truth of the matters stated. *Commonwealth* v. *Repoza*, 382 Mass. 119, 129 (1980).

This court has also held in numerous cases that a witness may testify to an extrajudicial identification, made by him, *to prove the defendant's guilt.* See *Commonwealth* v. *Vitello,* 376 Mass. 426, 458-459 (1978); *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 407-410 (1978); *Commonwealth* v. *Torres,* 367 Mass. 737, 738-739 (1975); *Commonwealth* v. *Redmond,* 357 Mass. 333, 341 (1970); *Commonwealth* v. *Nassar,* 351 Mass. 37, 42 (1966); *Commonwealth* v. *Locke,* 335 Mass. 106, 112 (1956). In these cases, the testimony was admissible "to corroborate the identification in court." *Id. Commonwealth* v. *Repoza, supra. Commonwealth* v. *Redmond, supra* at 340. This corroboration of the in-court identification is further evidence, in addition to the in-court identification, of the defendant's guilt. It is as probative of guilt as is the in-court identification. See *Commonwealth* v. *Torres, supra*; *Commonwealth* v. *Fitzgerald, supra*; *Commonwealth* v. *Vitello, supra* (holding that where constitutionally permissible, full probative value is to be given to an extrajudicial identification, even if the witness who identified the defendant outside of court failed to do so in court). The evidence is admitted to prove the truth of the matter asserted outside of court, and is, therefore, hearsay. It is admitted despite the hearsay rule and as an exception to it.

*Commonwealth* v. *Torres, supra,* involved voice identification. The other cases cited above involved in-person or photographic identification. A composite drawing, on the other hand, "represent[s] the effort of a trained police artist to transform a witness's oral description into pictorial form." *Commonwealth* v. *Williams,* 378 Mass. 217, 230 (1979). At best, it is "a recording in graphic form of statements made by [the witness]." *Commonwealth* v. *McKenna,* 355 Mass. 313, 327 (1969). This case presents the question whether such a "recording in graphic form," *id.,* should be admissible hearsay as is testimony of out-of-court photographic and in-person identifications, to corroborate an in-court identification or otherwise prove the guilt of the defendant. In *Commonwealth* v. *McKenna, supra,* we held such evidence inadmissible for that purpose. The holding of *McKenna* was sound and should not now be overruled.

The hearsay rule exists not only to protect a defendant's constitutional right to cross-examine witnesses against him, but also to exclude evidence that is, compared to nonhearsay evidence, likely to be unreliable. The rule is designed to exclude statements not made subject to cross-examination, not made under the solemnity of an oath, and not uttered before the scrutiny of a jury. See McCormick, Evidence § 245 (2d ed. 1972). See also *Commonwealth* v. *Trefethen*, 157 Mass. 180, 185 (1892); *Warren* v. *Nichols*, 6 Met. 261, 264 (1843). In-person or photographic identifications are admissible as substantive evidence despite hearsay concerns because the out-of-court identification is "regarded as having equal or greater testimonial value than one made in court." *Commonwealth* v. *Torres, supra* at 739. This is so because the circumstances of the earlier identification often are less suggestive than the circumstances of the in-court identification and because the out-of-court identification occurs closer to the time of the offense. *Id.* See *Commonwealth* v. *Locke, supra* at 112. In other words, even considering the hearsay concerns, on balance the hearsay out-of-court identification is likely to be more reliable than the nonhearsay in-court identification.

An extrajudicial description, reduced to a composite drawing, presents a different case from an extrajudicial photographic or in-person identification. A composite drawing is the result of a witness's attempt to match his mental image of the offender with various combinations of transparent overlays. The process is inherently susceptible to subtle and even unconscious suggestiveness by the police artist. The witness may be inarticulate or have only an ill-defined image of the offender. Translating a mental image to a composite drawing provides opportunities for communication failure, error in reproduction, and extraneous influence that are not present when a witness can compare his mental image directly with either a photographic image or a person.

Composite drawings are sufficiently less reliable than photographs that it cannot be said that such extrajudicial

descriptions are, like photographic identifications, more reliable than an in-court identification. Therefore, composite drawings should be governed by the hearsay rule, and should only be admissible for purposes of impeachment or rehabilitation. Here, the composite drawing was not offered, nor was it admissible, to impeach or rehabilitate the identification witness. Its admission was error.

I cannot conclude that the error was harmless. Identification of the defendant was the sole issue at trial. Blaney was identified by an in-court description, by the composite, by a photograph selected from an array of photographs, and by being pointed out at trial. Each of the pieces of evidence was supplied by a single witness, Manzo. The jury could find that Manzo saw the defendant on up to four occasions, but only briefly, and while Manzo was excited. This court has recognized that identification testimony in such circumstances deserves careful juror scrutiny. See *Commonwealth v. Rodriguez,* 378 Mass. 296, 302, 310-311 (1979).

The in-court identification testimony followed the crime by over ten months. The reliability of this testimony was diminished by the inherent suggestiveness of the courtroom setting and by the passage of time. See *Commonwealth v. Torres, supra; Commonwealth v. Locke, supra.* The photographic identification was made approximately one month after the crime. The composite drawing, however, was made within approximately three hours after its occurrence. The jury could have considered the composite drawing as probative of the defendant's guilt. The evidence that Blaney was the assailant was weak. It is impossible for this court to know that the drawing had no bearing on the verdict. In such circumstances, any doubt ought to be resolved in favor of the defendant. *Commonwealth v. Welcome,* 348 Mass. 68, 70 (1964). *Commonwealth v. Stone,* 321 Mass. 471 (1947).

I would reverse the conviction and remand for a new trial.