## COMMONWEALTH *vs.* PHILLIP PULLUM.

Suffolk. April 15, 1986. — July 7, 1986.

Present: BROWN, PERRETTA, & KASS, JJ.

*Identification. Practice, Criminal,* Argument by prosecutor. *Evidence,* Photograph.

At a criminal trial during which the only issue was the defendant's identity as the perpetrator of a burglary, certain unobjected-to portions of the prosecutor's closing argument, which improperly called the jury's attention to the defendant's failure to testify and which suggested that his courtroom demeanor and his conduct during a demonstration before the jury revealed consciousness of guilt, created a substantial risk of a miscarriage of justice, necessitating reversal of his conviction. [487-489]

At a burglary trial it was within the judge's discretion to admit in evidence, with controlling instructions, a sanitized mugshot-type photograph depicting the full face and profile of the defendant, which the victim had selected from an array, even though no evidence tended directly to prove that the victim had seen the burglar in profile. [489-490]

INDICTMENT found and returned in the Superior Court Department on December 15, 1983.

The case was tried before *Andrew G. Meyer,* J.

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

KASS, J. In certain pivotal respects, this case stands in counterpoint to *Commonwealth* v. *Young, ante* 452 (1986). Here the prosecutor's closing argument asked the jury to draw inferences from the defendant's deportment at trial which the record does not justify. The prosecutor's comment also underlined the defendant's failure to testify. We think it is necessary to reverse the conviction.

Pullum, the defendant, stood trial for breaking and entering a dwelling house in the nighttime, unarmed, with intent to commit a felony. G. L. c. 266, § 15. Taking the evidence most favorable to the Commonwealth, he was caught in the act of lugging from 98 Queensberry Street, Boston, miscellaneous personal property which he had stolen from an apartment on the third floor of that building. There was a confrontation between the defendant and Cynthia McCarthy, the wife of the building superintendent, who had as a considerable ally a large German shepherd dog. The dog had blocked the defendant's descent on a stairway and had him at bay when McCarthy, drawn by the dog's barks, came upon the scene. Her interview of the defendant lasted from three to four minutes before the defendant jettisoned his loot and bolted up the stairs and out the front of the building.

McCarthy was the only identifying witness at a trial in which the sole contested issue was the identity of the burglar. She had made an initial identification from an array of photographs and a further identification from a lineup. At the time of her encounter with the intruder, McCarthy noticed that he was missing front teeth.

So that the jury might see what the defendant looked like when he spoke (he chose not to testify), the judge instructed the defendant to stand before the jury and speak. He said from one position: "Good morning, Mr. Foreman. How [*sic*] you doing?" From another position (to which the judge had directed him), he said: "Today, if possible."

> During final argument, the prosecutor said:
>
> "[I]f you looked at him, you noticed he did have — I submit — the appearance of having some teeth missing. That's an important distinguishing feature. And you know it's a feature that Ms. McCarthy has never had an opportunity to observe, other than that night. And it was intentional, I submit, if you watched the defendant yesterday, when she was on the stand. He never opened his mouth so she could say: 'I see it now. I never saw it before.' And there was a reason for that, because although the

Commonwealth had three witnesses testify, I submit to you that in a real way, throughout the course of the case, that this defendant has testified — not with words, but with actions.

"And sometimes we have that saying, actions speak louder than words. And I submit to you the defendant's actions, during the course of this whole proceeding, have spoken pretty loudly as to his guilt or innocence. Trying to change his appearance in Roxbury court,[1] refusing to smile."

There was no objection to the closing argument, and we are confined to considering the defendant's arguments on appeal on the basis of the "substantial risk of a miscarriage of justice" standard. *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 313-316 (1973). *Commonwealth* v. *Valliere,* 366 Mass. 479, 494 (1974). *Commonwealth* v. *Clary,* 388 Mass. 583, 594 (1983). *Commonwealth* v. *Bannister,* 15 Mass. App. Ct. 71, 80 (1983).

We are unimpressed by the defense argument that the prosecutor's remarks constituted a pointed comment on the defendant's failure to produce evidence at trial. There is, of course, no obligation upon the defendant to do so. *Commonwealth* v. *Borodine,* 371 Mass. 1, 9 (1976), cert. denied, 429 U.S. 1049 (1977). *Commonwealth* v. *Bannister,* 15 Mass. App. Ct. at 79-80. Imputing that meaning to the prosecutor's language, however, is imaginative to the point of distortion.

There is a good deal more force to the criticism that the prosecutor's argument was a comment on the defendant's failure to testify. The prosecutor cleverly juxtaposed in sequence that "the Commonwealth had three witnesses testify" with the statement: "I submit to you that in a real way, throughout the course of the case, that this defendant has testified — not with words, but with actions." That remark improperly called attention to the defendant's not having testified in his defense and

---

[1] This referred to McCarthy's testimony that the defendant did not look the same in the lineup — in that his head was shaved and his face was clean shaven — as when she had seen him before.

suggested his inaction was self-incriminating testimony. See *Commonwealth* v. *Domanski,* 332 Mass. 66, 69 (1954); *Commonwealth* v. *Smith,* 387 Mass. 900, 908-909 (1983); *Commonwealth* v. *Young, supra* at 453-454. Were that the only improper and prejudicial remark we would be inclined to say that the sting was removed by the judge's clear instruction that the defendant had no obligation to testify and that, consequently, there was not a sustantial risk that a miscarriage of justice flowed from the remark. See *Commonwealth* v. *Gouveia,* 371 Mass. 566, 571-572 (1976); *Commonwealth* v. *Smallwood,* 379 Mass. 878, 892 (1980).

More egregious was the attribution of consciousness of guilt to the defendant at trial by reason of his not displaying his teeth or refusing to smile. He was not called upon to bare his teeth or to smile broadly. That he should not have done so spontaneously ought not to have been described as remarkable. For the defendant, there was little to smile about.

Within limits we have discussed in *Commonwealth* v. *Young, supra* at 454, it is permissible to comment on courtroom demeanor, particularly if that demeanor is in some aspect noteworthy, as the squirms, smirks and laughs of the defendant in *Commonwealth* v. *Smith,* 387 Mass. at 907, or the making of faces at the jury, as in *Commonwealth* v. *Burston,* 11 Mass. App. Ct. 1036 (1981). Suggesting that normal courtroom behavior· betrays consciousness of guilt is improper. *Commonwealth* v. *Valliere,* 366 Mass. at 494. *Commonwealth* v. *Young, supra* at 455. That is what the prosecutor pointedly did in this case when he argued that the jury should infer concealment from the failure of the defendant to open his mouth or to smile. The defendant did what was asked of him when he addressed the jury,. No phrase more likely to cause him to open his mouth (e.g., "this wide, wide world") was suggested, nor was he asked simply to open his mouth. The record does disclose colloquy among the judge and counsel about whether the defendant should have been asked to smile, a proposal which the trial judge rejected because there was no evidence that the burglar had smiled at McCarthy during the confrontation; the judge wanted the jury to see as close to the same thing as the

witness could have seen. Compare *Commonwealth* v. *Kater,* 388 Mass. 519, 532-533 (1983), in which the court disapproved a comment in closing argument suggesting concealment by the defendant of hairy arms when there was no evidence he had hairy arms. In the instant case there was evidence received from a police officer that the defendant had missing teeth, yet the effect of the closing argument was to suggest, improperly, that evidence of guilt arises when a defendant sits with decorum in the courtroom. See *Commonwealth* v. *Borodine,* 371 Mass. at 11; *Commonwealth* v. *Kozec,* 21 Mass. App. Ct. 355, 364 n.7 (1985), further appellate review granted, 397 Mass. 1101 (1986).

The jury, in questions put to the judge during deliberations, manifested concern about the missing teeth issue and the point at which observation of what peculiarity had entered the case. In a case where identification was the only issue and identification depended upon a single witness, we think there is reason to apprehend that the improper argument of the prosecution carried with it a substantial risk of a miscarriage of justice. Compare *Commonwealth* v. *Clary,* 388 Mass. at 594. Cf. *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1, 8-9 (1980). It becomes necessary to reverse the judgment.

Should the question recur at retrial, we comment on the last point urged by the defendant on appeal, that a profile photograph of the defendant was wrongly admitted in evidence. McCarthy, the Commonwealth's principal witness, it will be recalled, had identified "mugshots" of the defendant from an array, and those photographs were received in evidence, over the objection of defense counsel as to one of them. The pictures were of the usual full face and profile sort. Defense counsel conceded the full face picture. Her objection to the profile picture was that the two, taken together, fixed a familiar "wanted" impression, and the jurors would not fail to speculate that the defendant had previously made it into the police files. This was not fair, the defense urges, because there was no evidence that McCarthy had ever seen the defendant in profile.

We think this cuts the matter too fine and conclude there was no error in admitting both photographs. The judge did what he could to sanitize the pictures. He cut them (or had

them cut) apart, and numbers were removed. At that, it was evident that the portraits were not the work of Yousuf Karsh. There was, for example, a height ruler over the defendant's left shoulder. The judge astutely instructed the jury that "the police acquire photographs in a wide variety of circumstances, and from various sources. They may obtain pictures of people who have been arrested, who were arrested, and later found not guilty; of people who have applied for identification cards, of people who have applied for hackney licenses, and of people who have applied for a gun permit." That served to control whatever untoward damage might flow from the nature of the photos.

Although there was no evidence which tended directly to prove that McCarthy had seen the defendant in profile, the interview manifestly had not been a static one. We are unprepared to say that the profile feature might not have helped the witness, and we conclude that admission of the two pictures was a proper exercise of the trial judge's discretion. *Commonwealth* v. *Blaney,* 387 Mass. 628, 634-640 (1982).[2]

*Judgment reversed.*

*Verdict set aside.*

---

[2] Had the evidence affirmatively established that the identifying witness had only seen a frontal view, the profile view ought to have been excluded. See *Commonwealth* v. *Blaney,* 387 Mass. at 638 n.9.