COMMONWEALTH *vs.* TIMOTHY SMITH.

Nos. 89-P-381 & 90-P-170.

Middlesex. September 11, 1990. - October 24, 1990.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Identification. Evidence*, Identification, Relevancy and materiality, Photograph, Alibi. *Practice, Criminal*, Affidavit, New trial, Assistance of counsel, Argument by prosecutor, Voir dire, Attendance of witnesses. *Jury and Jurors. Constitutional Law*, Delay in appeal.

At the trial of indictments arising from the robbery of a restaurant, the judge did not err in admitting in evidence the photographic array from which eyewitnesses to the crimes had identified the defendant, where the array was not unduly suggestive, where the photographic identifications were crucial in fixing suspicion on the defendant, where indications that the defendant may have had a prior record were effectively removed from the array, and where the array did not accentuate police origin or imply that the pictures were acquired in connection with a prior crime. [450-453]

The judge in a robbery case did not, in the circumstances, err in denying the defendant an evidentiary hearing when he moved for a new trial at which he proposed to produce newly obtained alibi witnesses. [453-456]

At the trial of indictments arising from the robbery of a restaurant, it was not an occasion of ineffective assistance of counsel for defendant's counsel to fail to object to the introduction of a photographic array ("mug shots") from which eyewitnesses to the crimes had identified the defendant [456]; to fail to object to references by the prosecutor, in closing argument, to the absence of corroborating witnesses to the defendant's alibi [456]; to fail to object to the fact that the venire from which the jury were chosen was entirely white, where there was no evidence that blacks were systematically excluded from the venire [456]; or to fail to seek relief under G. L. c. 261, § 27D, from the denial of his request for a certificate under G. L. c. 233, § 13B, to compel the attendance of out-of-State witnesses [456-457].

There was no merit to the contention that this case should have been dismissed under the speedy trial provisions of Mass.R.Crim.P. 36(b)(1). [457]

This case did not present an occasion for granting relief to a criminal defendant because of delays in the appellate process. [457]

INDICTMENTS found and returned in the Superior Court Department on May 30, 1986.

The cases were tried before *James D. McDaniel, Jr.*, J., and a motion for a new trial was considered by him.

*Joan Lieberman* for the defendant.

*Richard Birke*, Assistant District Attorney, for the Commonwealth.

KASS, J. Timothy Smith was convicted by a jury of armed robbery, assault with a dangerous weapon, and stealing by confining. Of eight points which he raises on appeal, we concentrate discussion on two: 1) whether it was unfairly prejudicial to the defendant to have received in evidence the photographic array from which eyewitnesses to the crime had picked his picture; and 2) whether the defendant was entitled to an evidentiary hearing when he moved for a new trial at which he proposed to produce newly obtained alibi witnesses. We affirm.

On March 27, 1986, two men held up a Burger King restaurant in Stoneham. One of the two confronted the on-duty manager, David Roustio, with a handgun and demanded the money in the safe. Encouraged by the business end of the gun barrel, Roustio led the holdup man to a rear office where the safe was located. Denise Dixon, another employee of the restaurant, was in that office and it was she who had the safe combination in her head. Dixon, now also at the point of a gun, opened the safe and produced about $300. Disappointed and skeptical that this was all, the gunman rummaged in the safe but there was, indeed, no more cash. He scooped up the money, left the office, jumped over the counter, and joined his accomplice, who had a sawed-off shotgun trained on patrons in the seating area. Together the robbers left and joined a third accomplice in a getaway car.

1. *Receipt of mug shots in evidence.* Working from descriptions of the robbers which Roustio and Dixon were able to give, the police put together a photographic array of suspects. Roustio and Dixon independently picked from the array a photograph of the defendant as that of the man who

had forced them at gunpoint to open the safe. Their photo identification led to the defendant's arrest.

As a preliminary matter, there is no basis at all for the defense argument, made for the first time on appeal, that the photo array was unduly suggestive. We have examined the collection of photographs — there are thirteen pairs — and they suggest nothing at all. Seven of the subjects have facial hair; four of those seven have beards as well as moustaches. All are young black men. No particular pair of photographs leaps from the page or, in isolation, answers the description reported to the police by the victims.

In any event, the defendant argues, there was no need to place the photo array before the jury. It was sufficient to establish that identification of photographs by the victims forged the link between the defendant and the crime; placing the photographs physically before the jury served no purpose other than hinting to the jury that the defendant had previously been involved with the police. See and compare *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 622 & n.4 (1986), *S.C.*, 400 Mass. 1002 (1987). No objection was taken by trial counsel to introduction of the photo array, and we are remitted, therefore, to considering the point in the context of the substantial risk of a miscarriage of justice standard. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

Admission of a defendant's mug shots in evidence, laden, as it is, with potential for characterizing the defendant as a careerist in crime, is inhibited by three criteria: 1) the prosecution must show some need to introduce the mug shots; 2) the mug shots, to the extent possible, should not indicate a prior record; and 3) the mug shots should not call attention to their origins and implications. *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 309 (1979). *Commonwealth* v. *Smith*, 21 Mass. App. Ct. at 622 n.4. *United States* v. *Fosher*, 568 F.2d 207, 214 (1st Cir. 1978). As to the first criterion, need, the introduction of mug shots used in a photographic identification often serves two probative purposes: *first*, it explains how the accusing finger came to be pointed at the defendant;

and *second*, it assists the jury in evaluating the accuracy of the photographic identification. See *id.* at 213-214. Contrast *Commonwealth* v. *Smith*, 21 Mass. App. Ct. at 622-623, in which the identification of the defendant as the alleged guilty person had been conceded and the sole purpose of placing the photographs in evidence was to burden the defendant with prejudice.

Here, the photo identifications were the major investigatory tool which fixed suspicion on the defendant, and both prosecution and defense had an interest in arguing whether a positive identification of the defendant on the basis of the photo array was plausible. In such cases the question has not been whether mug shots may be received, but whether they have been adequately sanitized. See, e.g., *Commonwealth* v. *Cobb*, 374 Mass. 514, 522-523 (1978); *Commonwealth* v. *Rodriguez*, 378 Mass. at 309; *Commonwealth* v. *Blaney*, 387 Mass. 628, 637-640 (1982); *Commonwealth* v. *Banks*, 27 Mass. App. Ct. 1193, 1194-1195 (1989).

The cases just cited all recognize that juries are likely to infer from an array of front and profile photographs that the individuals in the pictures have had business with the police before. Most jurors have been to the post office. Nonetheless, those decisions have accepted some measure of suggestion that a defendant was previously involved with the criminal justice system as a necessary price of receiving useful evidence. What judges and prosecutors are asked to do is to diminish the taint of criminality. This requires masking signs which underscore that the photographs are mug shots, e.g., height scales in the background or chest plates that bear a name or number. Indicia of that sort were effectively scrubbed from the array introduced in this case. The photographs appeared bound in a fourteen-and-a-half inch manila file folder with cut-outs, behind which the photographs were inserted in such a manner that no numbers, scales, signs or other signs of police origin were visible. The full face and profile shots were separated, although displayed as pairs. All in all, the array was professionally prepared so as to minimize suggestion. Those precautions met, as well, the third

criterion, that the array not accentuate police origin or imply that the pictures were acquired in connection with a prior crime. It also bears mentioning that the prosecutor never referred to the pictures as mug shots and that when they were offered in evidence, neither counsel nor judge said anything which emphasized a connection between the photographs and prior criminal activity.

Both in purpose and in method, the introduction of the photo array was within tolerances established in case law. There was no error, let alone a serious risk of a miscarriage of justice.

2. *The lack of an evidentiary hearing on the motion for a new trial.* In addition to mistaken identity, Smith made an alibi defense — that he was in New York City when the holdup in Stoneham occurred. Nothing supported the alibi defense at trial except Smith's own testimony. Concerning the whereabouts of persons whom he said he had visited, Smith was vague. Indeed, the thread of Smith's alibi testimony was that he lacked corroborating testimony because he did not know where the corroborating witnesses, a friend and a cousin, could be located.

Roughly two years after Smith's trial, new counsel obtained three affidavits whose general purport was to place the defendant in New York from March 26, 1986, to March 29, 1986, i.e., bridging the date of the robbery, March 27, 1986. The trial judge was ill-disposed to credit the affidavits, in part because they conflicted with testimony which the defendant had given at trial (thus suggesting later contrivance) and in part because, if read very critically, none of the affidavits said the affiant was with the defendant on March 27.

The defendant's contention is that the affidavits, particularly those of Frederick Barrows, a friend, and Lisa Shuemate, a cousin of the defendant, provoked enough uncertainty about whether Smith could have been in Stoneham at the time of the Burger King holdup that the judge should have held a hearing at which the affiants could be examined and cross-examined. In the face of affidavits that must have caused the judge's brow to furrow, the argument runs, the

judge ought not to proceed solely on the basis of his doubt that the affidavits are truthful. The cases do not support that position. Rather, appellate courts defer to the trial judge's sense of the entire case, his nose for it, and so place in the sound discretion of the trial judge whether to hold an evidentiary hearing on a motion for a new trial. *Commonwealth v. Heffernan*, 350 Mass. 48, 54, cert. denied, 384 U.S. 960 (1966). *Commonwealth v. Stewart*, 383 Mass. 253, 257 (1981). *Commonwealth v. Crowe*, 21 Mass. App. Ct. 456, 486-487 (1986). Similar respect is owing from a reviewing court to the trial judge's resolution of the larger question, whether the motion for a new trial based on newly discovered evidence should be granted or denied. *Commonwealth v. Little*, 384 Mass. 262, 268-269 (1981). *Commonwealth v. Crowe, supra* at 486-487.

Within the context of that question, the judge had to consider whether the "new" evidence was, in fact, new in the sense that it was not available at trial through reasonable exercise of diligence. See *Commonwealth v. Kelley*, 370 Mass. 147, 152 (1976); *Commonwealth v. Markham*, 10 Mass. App. Ct. 651, 654 n.1 (1980). The defendant must have known whom he was with and the identities of the alibi witnesses (the friend, the cousin[1]), cannot help but have been known. Whether they could be found at the time of trial is another matter and, as to that, appellate counsel blames trial counsel with such lack of industry in looking for the alibi witnesses as to constitute ineffective assistance of counsel. Failure of counsel to exercise reasonable diligence in interviewing and producing alibi witnesess has been held to be the basis for a new trial. See *Bell v. Georgia*, 554 F.2d 1360 (5th Cir. 1977); *Wilson v. Cowan*, 578 F.2d 166, 168 (6th Cir. 1978); *Eldridge v. Atkins*, 665 F.2d 228, 232 (8th Cir.

---

[1]We have not discussed the affidavit of Smith's ex-wife, which said no more than that she understood him to be in New York, nor that of a coventurer in the robbery, Myron Morales, who made an affidavit *after* conviction recanting an earlier statement implicating the defendant. As to the suspect nature of such an affidavit, see *Commonwealth v. Grace*, 370 Mass. 746, 752 (1976); *Dirring v. United States*, 353 F.2d 519, 520 (1st Cir. 1965).

1981); *Nealy* v. *Cabana*, 764 F.2d 1173, 1176 (5th Cir. 1985); *Code* v. *Montgomery*, 799 F.2d 1481, 1482-1483 (11th Cir. 1986). In all those cases, the various trial lawyers had been provided with significant information about alibi witnesses and failed to pursue it.

Here the record is unrevealing about the extent of trial counsel's efforts. Appellate counsel proceeds on a "the facts speak for themselves" basis: since she, appellate counsel, found the alibi witnesses, had trial counsel been minimally competent and effective, he could have done as much. The conclusion by no means follows. The defendant, at trial, was able to provide no addresses, old or new, for alibi witnesses to whom he had referred. Although the defendant could not participate much in hunting for his alibi witnesses from his prison cell, he had to provide his lawyer with some leads. Neither an affidavit nor testimony of trial counsel was offered to describe what information he had been given by the defendant and what efforts he had made to follow it up.

From the pretrial and trial record we have some sense that trial counsel tried to find witnesses who would support the defendant's claim that he was in New York on the day of the crime. Defense counsel had petitioned under G. L. c. 233, § 13B, to obtain a certificate for the attendance of out-of-State witnesses and to obtain certain hotel and airline records. At a later stage of pretrial proceedings, defense counsel waived the § 13B petition to secure out-of-State witnesses, as it related to the cousin, Lisa Shuemate, because she was thought to be in the Commonwealth. The § 13B petition was denied as to other out-of-State witnesses.

On the problematical history available after trial to the judge about trial counsel's effort to produce the two potentially significant witnesses, Shuemate and Barrows, we think the judge was warranted in deciding (even if we might have done otherwise) that: (1) the defendant's claim of ineffective assistance of counsel was Monday morning quarterbacking; (2) the affidavits of Shuemate and Barrows bore earmarks of posttrial carpentry; and (3) he, the judge, had a sufficient sense of the trial and the materials offered in support of a

new trial that he could rule on the motion for a new trial without an evidentiary hearing.

3. *Other points raised.* We consider the defendant's other points in summary manner.

(a) Trial counsel for the defendant did not act ineffectively in failing to object to introduction of the mug shot array. By cross-examination and argument, trial counsel argued the difficulty of identification and the failure of identifying witnesses to observe important physical characteristics. Use of the photo array, which contained several look-alikes, assisted in that line of defense. Apart, therefore, from the unpleasant reality that there was no solid basis to object to admission of the photo array, defense counsel at trial had a sound tactical reason for having it come in.

(b) It was not unfair of the prosecutor to refer, in closing argument, to the absence of corroborating witnesses to the defendant's alibi. Such witnesses had been referred to in the defense opening and the defendant's testimony. Commenting on weaknesses in a defendant's testimony is not the same as commenting on a defendant's silence or the failure to produce an alibi. See *Commonwealth v. Cancel,* 394 Mass. 567, 575-576 (1985); *Commonwealth v. Melendez,* 12 Mass. App. Ct. 980, 981 (1981). As the prosecutor's comments were within bounds, it was not an occasion of ineffective assistance of counsel to fail to object to them.

(c) On appeal, the defendant, who is black, argues for the first time that the trial got off on an unlawful foot because the venire from which the jury were chosen was entirely white. There was no evidence of systematic exclusion of blacks on this venire. See *Commonwealth v. Williams,* 378 Mass. 217, 221 (1979). A showing of systematic exclusion requires more than an inference based on results. *Id.* at 221. In the absence of signs of systematic exclusion, it did not constitute ineffective assistance of counsel to fail to object to the all-white venire.

(d) No error attended the refusal of the trial judge to issue a certificate, under G. L. c. 233, § 13B, to compel the attendance of out-of-State witnesses. Except for Shuemate,

who later was thought to be in Massachusetts, the material offered seemed of speculative and marginal value. The trial judge acted within his discretion. See *Commonwealth* v. *Edgerly*, 6 Mass. App. Ct. 241, 254-255 (1978). We do not fault defense counsel for not attempting to seek relief under G. L. c. 261, § 27D, from the denial of his request for a certificate under G. L. c. 233, § 13B.

(e) Trial of this case began twenty-three days after one year from the time of the return day. On appeal, the defendant says the case should have been dismissed under Mass.R.Crim.P. 36(b)(1), 378 Mass. 909 (1979). The point is frivolous. There are far more than twenty-three days which would be excluded from the one year under paragraph (b)(2) of the rule.

(f) The delay in obtaining the trial transcript is extremely unfortunate and certainly is not a delay we condone. Several changes of counsel by the defendant seemed to have contributed to the delay. There was no deliberate delay by the government, and the case does not present an occasion for reversal of the judgments because of delays in the appellate process. See *Commonwealth* v. *Weichel*, 403 Mass. 103, 108-109 (1988).

*Judgments affirmed.*