· COMMONWEALTH *vs.* WILLIAM C. PAYTON.

No. 91-P-502.

Suffolk. September 13, 1993. - December 6, 1993.

Present: SMITH, PORADA, & LAURENCE, JJ

*Identification. Evidence*, Identification, Photograph, Other offense. *Practice, Criminal*, Assistance of counsel, Instructions to jury, Argument by prosecutor.

In the circumstances of a criminal case in which the defendant argued to the jury that the array of photographs from which he was identified was so suggestive as to lead the witnesses to make incorrect identifications, the admission in evidence of the array was not error. [590-592]

In the circumstances of a criminal trial in which the testimony of the identifying witnesses concerning their observations suggested that the profile view in a police mug shot photograph was of some assistance in identifying the perpetrator, the judge did not abuse his discretion in allowing mug shots with the front and profile views unsevered in evidence [592-594]; and there was no basis for a constitutional claim that trial counsel was ineffective in not objecting to the jury's examination of the mug shots unsevered [594].

In the circumstances of a criminal case, the admission in evidence of an unsanitized mug shot of the defendant was not error where nothing on the photograph suggested that the defendant had a prior record and the judge gave a strong limiting instruction to the jury [594-595]; and there was no basis for a constitutional claim that trial counsel was ineffective in not objecting to the admission of the mug shots unsanitized where that judgment was not manifestly unreasonable [595-596].

At a criminal trial, the judge's instructions to the jury on identification were entirely proper and based on the evidence presented [596-597]; and the judge's instructions on reasonable doubt, in light of the whole charge, adequately apprised the jury of the reasonable doubt standard [597].

No error appeared in the closing remarks of the prosecutor at a criminal trial. [597-598]

INDICTMENTS found and returned in the Superior Court Department on April 18, 1989.

The cases were tried before *Robert Malcolm Graham, J.*

*Janis M. Berry* for the defendant.

*LaDonna J. Hatton*, Assistant Attorney General, for the Commonwealth.

SMITH, J. A jury convicted the defendant of two crimes, armed assault with intent to murder Edward Studer and assault and battery on Studer by means of a dangerous weapon, a handgun. On appeal, the defendant has raised six issues. Several of the issues concern the admission in evidence of photographs and related testimony identifying the defendant as the person who assaulted Studer. The other issues include claims that the prosecutor made improper remarks in his closing argument and that the judge committed prejudicial error in his instructions on identification and reasonable doubt.

The Commonwealth presented the following evidence about the crimes and the subsequent identifications of the defendant as Studer's assailant. On the evening of November 4, 1988, an armed assailant pushed his way into an apartment in Boston. He grabbed an occupant of the apartment, one Wilkerson, and held a gun behind his head, and demanded money and drugs. The assailant then shot Studer, another occupant of the apartment, in the face. After he was shot, Studer jumped out of a window, ran to a telephone, and called the police. The assailant fled from the scene. Wilkerson, at the scene, and Studer, at a hospital, gave descriptions of the assailant to the police.

As a result of his wound, Studer was hospitalized in three different hospitals for a total of five weeks. After he was finally released, he was asked by the police to come to the police station and to view a photographic array. On December 16, 1988, a Detective McDonald showed him an array that contained eleven photographs including a photograph of the defendant.[1] The photographs were double-pose photo-

---

[1] On a previous occasion Studer had been to the police station to view a book of photographs. Studer testified that, when he was looking at the first page of the book, the officer, who was not McDonald, terminated the identification procedure because it was not his case.

In regard to Studer's first visit to the police station, the defendant's brief states, "At some time after the shooting, the victim Studer went to the

graphs, "the 'classic full-face and profile type,' . . . commonly known as a 'mug shot'." *Commonwealth* v. *Blaney*, 387 Mass. 628, 634 (1982) (citations omitted). Police placards were across the subjects' chests, and identification numbers, including dates, were on the placards. From the defendant's photograph in the array, Studer identified the defendant as the person who shot him.[2]

Trial counsel attacked the photographic identification by filing a motion to suppress Studer's out-of-court identification on the ground that the identification was so impermissibly or unnecessarily suggestive and, consequently, conducive to irreparable misidentification as to deprive the defendant of his due process rights. See *Commonwealth* v. *Thornley*, 400 Mass. 355, 364 (1987). In particular, trial counsel claimed that the composition of the array was unfair. He argued that the description of the assailant, given at the time of the crime by Wilkerson and Studer, was of a heavyset man. The photographs in the array were all of thin-faced men except for the defendant who was heavyset. After an evidentiary hearing, the motion was denied. On appeal, the defendant does not raise the denial of his motion as an issue.

At the trial, the central issue was the identification of the defendant as the person who committed the crimes. Studer

---

police station to look at a book of pictures, but he was unable to select a photo of the assailant . . . . Thereafter, on December 16, 1988, approximately six weeks after the shooting, Studer returned to the police station to view an array of eleven photographs, which were the mug shots [introduced as evidence in this matter] . . . . It was only when confronted with mug shots, rather than neutral photographs, that Studer could make any identification, then selecting Payton's mug shot from the array." There are at least five other references in the defendant's brief to Studer's "failure" to make an identification of Payton at his initial visit to the police station. The undisputed evidence, however, was that Studer did not have the opportunity to make any identification at the first visit.

[2]Detective McDonald showed Wilkerson some photographs at the apartment. He looked through the photographs but he did not choose any as being that of Studer's assailant. There is nothing in the record that shows that the defendant's photograph was in the array shown to Wilkerson at that time.

On the day of the trial, Wilkerson did select a photograph of the defendant from an array and so testified.

and Wilkerson testified in regard to their out-of-court identifications and also made in-court identifications of the defendant as the armed assailant. Both were vigorously cross-examined as to various discrepancies in their testimony.

Detective McDonald testified about the manner in which he assembled the photographic array and also corroborated Studer's and Wilkerson's testimony concerning their out-of-court identifications. During the course of his testimony, McDonald stated, without objection, that the photographs in the array had been taken from "our identification files." The judge interrupted the detective's testimony and instructed the jury in the following manner:

> "Now, I want to caution the jury that at this point there are several witnesses who have testified that the police showed them photographs of this defendant, if you accept that testimony. You are not to draw any inference against this defendant because the police have his photograph. Police departments collect pictures of many people from many different sources and for many different reasons. You are not to speculate what the reason was in this case. The fact that the police may have this defendant's picture does not mean the defendant committed this or any crime."

The Commonwealth then made a motion to place the entire array in evidence. The judge marked the array not as an exhibit but rather for identification purposes. He did order the defendant's photograph to be marked as an exhibit. After the defendant finished his cross-examination of McDonald, the Commonwealth rested. At that point, defendant's trial counsel told the judge that he had no objection to the entire array being marked as an exhibit; the judge did so. Thereafter, the jury viewed the entire array, including the defendant's photograph. The front and profile photographs were not separated, and the photographs were not sanitized.

In his closing argument, trial counsel for the defendant stressed that the identifications by Studer and Wilkerson were so unreliable that the Commonwealth had failed to

prove its case beyond a reasonable doubt. He specifically focused the jury's attention on the composition of the array, claiming that every person pictured in the array was a thin man while the defendant's photograph was of a heavyset man.

On appeal, the defendant has new counsel. He claims that the trial judge committed reversible error when he allowed in evidence the unsanitized mug shots and McDonald's testimony that the array was assembled from "our [Boston police department] files." He argues that he was prejudiced because that evidence indicated to the jury that he had a prior criminal record. The defendant also claims that he was denied effective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights because trial counsel assented to the admission of the mug shots and related testimony. The defendant also contends that the judge misinstructed the jury on the proper use of identification evidence.

1. *The introduction in evidence of the unsanitized mug shots and related testimony; ineffective assistance of counsel.* At a trial, "the Commonwealth [cannot] show that a defendant has committed a crime on a prior occasion for the purpose of creating an inference of his guilt of the crime charged." *Commonwealth* v. *Blaney*, 387 Mass. at 637. "It is a matter of fairly common knowledge that the central photographic files maintained by police do not . . . contain the likenesses of any save those who have had some contact with criminal law." *Commonwealth* v. *Gibson*, 357 Mass. 45, 48-49 (1970). Therefore, the courts have recognized, over the years, that there is a "risk that any use in evidence of photographs of the double type ordinarily used in police identification files will suggest to the jury that the defendant may have a prior criminal record." *Commonwealth* v. *Gerald*, 356 Mass. 386, 388 (1969). Given this risk of prejudice, a test has been fashioned in regard to the introduction of mug shots in evidence. That test includes the following: "the prosecution must show some need to introduce the mug shots;

. . . the mug shots, to the extent possible, should not indicate a prior record . . . and . . . should not call attention to their origins and implications." *Commonwealth* v. *Smith*, 29 Mass. App. Ct. 449, 451 (1990). *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 309 (1979). *United States* v. *Fosher*, 568 F.2d 207, 214 (1st Cir. 1978). We now turn to our analysis of this test in connection with the evidence presented in this case.

a. *The need of the Commonwealth to introduce mug shots.* The inquiry into the Commonwealth's need to introduce mug shots should focus on "the evidence of record at the time the photograph was actually received in evidence and displayed to the jury." *United States* v. *Fosher*, 568 F.2d at 215 n.23. If the defendant concedes his identification as the allegedly guilty person, there may be no justification for admitting mug shots in evidence. See *Commonwealth* v. *Barrett*, 386 Mass. 649, 652 (1992)(victim knew his assailant before the incident occurred; identification was not an issue at trial); *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 622 (1986)(no "need for the introduction of the [mug shot], since the identification of the defendant as the alleged guilty person was conceded by the defense"). If, however, the identification of the perpetrator of the crime is a live issue at trial, "the introduction of mug shots used in a photographic identification often serves two probative purposes: *first*, it explains how the accusing finger came to be pointed at the defendant; and *second*, it assists the jury in evaluating the accuracy of the photographic identification." *Commonwealth* v. *Smith*, 29 Mass. App. Ct. at 451-452 and cases cited.

We deem it important to the resolution of this appeal to note that the circumstances of the admission in evidence of the mug shots in this case were quite different from other cases involving the introduction of similar evidence.[3] Here, it

---

[3]Issues concerning the admission in evidence of unsanitized mug shots generally arise in one of two ways. In one type of case, the identifying witness testifies that he or she identified the defendant from a photograph that appeared in an array. The Commonwealth then introduces the defendant's mug shot, but not the entire array, in evidence. See *Commonwealth* v. *Gerald*, 356 Mass. at 387-388; *Commonwealth* v. *Cobb*, 374

is clear from the record that part of the trial counsel's strategy was to attack the photographic identifications by showing that the array was so suggestive as to lead the identifying witnesses to make faulty identifications. This strategy required the jury to examine the array of mug shots, including the defendant's photograph. Therefore, it was the defendant who needed to have the mug shots in evidence. Of course, the Commonwealth also had a need for this evidence in order to show that the composition of the array was not suggestive.

b. *Appearance and presentation of the mug shots.* Once the need to introduce mug shots in evidence has been established, "the decisions . . . have required judges and prosecutors to use reasonable means to avoid calling the jury's attention to the source of the photographs used to identify the defendant." *Commonwealth* v. *Blaney*, 387 Mass. at 638.

Reasonable means have included "cropping the photographs to remove the identification placards often worn by the subjects of the photographs, and covering securely any notations on the photographs which might reveal their origins . . . . [S]everance of the frontal and profile views of double-pose mug shots may be reasonable in certain circumstances." *Ibid.* On appeal, the defendant claims that the judge, on his own, should have ordered the cropping of the photographs and the separation of the double-pose mug shots. Because the judge failed so to order, the defendant argues that the judge committed reversible error.

---

Mass. 514, 522 (1978); *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 621-622 (1986); *Commonwealth* v. *Pullum*, 22 Mass. App. Ct. 485, 489 (1986); *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 752 (1989); *Commonwealth* v. *Banks*, 27 Mass. App. Ct. 1193, 1194 (1989); *Commonwealth* v. *Holmes*, 32 Mass. App. Ct. 906, 909-910 (1992).

Less frequently, the Commonwealth introduces the entire array, including the defendant's mug shot, in evidence. See *Commonwealth* v. *Blaney*, 387 Mass. at 634-635; *Commonwealth* v. *Weichell*, 390 Mass. 62, 75-76 (1983), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Francis*, 391 Mass. 369, 374 (1984); *Commonwealth* v. *Key*, 21 Mass. App. Ct. 293, 295 (1985).

In both types of cases, the mug shots, either singly or in an array, were introduced in evidence, in most instances, over the defendant's objection. Here, the record demonstrates that trial counsel did not object for tactical reasons.

.Because the front and profile views of the photographs in the array were not separated, it is reasonable to assume that the jurors were aware that the array consisted of mug shots. *Commonwealth* v. *Smith*, 29 Mass. App. Ct. at 452 ("[m]ost jurors have been to the post office"). However, "even assuming that the jury had inferred that the photographs at issue were mug shots, we have 'never held . . . that the admission in evidence of unsevered double-pose mug shots is sufficient, standing alone, to constitute reversible error.' " *Commonwealth* v. *Tuitt*, 393 Mass. 801, 809 (1985), quoting from *Commonwealth* v. *Blaney*, 387 Mass. at 638.[4] Therefore "it [is] within the discretion of the trial judge to determine that the photographic array should go to the jury precisely as it existed at the time of [the identifying witness's] identifications." *Commonwealth* v. *Weichell*, 390 Mass. at 76.

One reason that appellate courts refuse to adopt a rule requiring the severance of double-pose photographs in all cases (note 4, *supra*) is that, at times, unsevered mug shots, even of the defendant, may serve "a highly significant evidentiary function" at trial. *Commonwealth* v. *Francis*, 391 Mass. at 375 (no abuse of discretion to introduce in evidence unseparated mug shots where inclusion of profile views was important because identifying witness had closest view of victim's pursuer in profile). *Commonwealth* v. *Blaney*, 387 Mass. at 639 (not error for the judge to refuse to require that the photographs be severed where chief prosecution witness caught several glimpses of the robber's profile).

Here, the testimony of both identifying witnesses at trial concerning their observations suggested that the profile view in a mug shot was of some assistance in identifying the perpetrator.[5] See *Commonwealth* v. *Pullum*, 22 Mass. App. Ct. 485, 489-490 (1986) (although no direct evidence that iden-

---

[4]In *Commonwealth* v. *Blaney*, 387 Mass. at 637, the Supreme Judicial Court rejected the idea of creating "a rule requiring severance of all double-pose mug shot photographs in every case in which the Commonwealth seeks to introduce such photographs in evidence."

[5]For example, both Studer and Wilkerson testified that the assailant was, at times, standing behind Wilkerson's head and, at other times, beside Wilkerson.

tifying witness saw the defendant in profile, unsevered mug shots admissible because "the interview manifestly had not been a static one"). In the circumstances of this case, the judge did not abuse his discretion in allowing the unsevered mug shots in evidence.

Appellate counsel faults trial counsel for not objecting to the examination of the unsevered mug shots by the jury. Assuming, without deciding, that trial counsel should have objected, how was the defendant prejudiced? Considering the need of both the defendant and the Commonwealth to have the jury examine the array, if trial counsel had objected to the admission of the unsevered mug shots, the judge, at most, would have ordered that the full face and profile photographs be separated and displayed to the jury as pairs. Undoubtedly, the jurors, using their common sense, would have recognized the severed photographs to be mug shots. *Commonwealth* v. *Smith*, 29 Mass. App. Ct. at 452. Therefore, where it was necessary for the jury to view the array, trial counsel was not ineffective, in the constitutional sense, in not objecting to the jury viewing the unsevered photographs.

"It is, of course, preferable that photographs introduced in evidence be purged of any characteristics which might lead the jury to infer that the defendant had been involved in any prior misconduct." *Commonwealth* v. *Blaney*, 387 Mass. at 639. Appellate counsel argues that the judge, on his own, should have ordered that the photographs be sanitized by cutting off those portions of the photographs that displayed the police identification placard. Each placard contained the inscription, "POLICE DEPT., BOSTON, MASS.", an identification number, and the date the photograph was taken. The defendant also claims that trial counsel was ineffective because he did not request that the photographs be cropped. The defendant argues that the failure to sanitize the photographs constitutes a ground to vacate his convictions because the placard indicated that he had a prior record.

Nothing on the placard suggests that the defendant had a prior record. The dates on the photographs, including that of the defendant, are later than the date of the offenses for

which the defendant was on trial. Compare *Commonwealth v. Lockley*, 381 Mass. 156, 166 (1980)(apparent to the jury that the police possessed defendant's photograph before incident in question). The defendant argues that, since the date on his photograph precedes the date on which Studer selected his photograph from the array, the jury could only conclude that the photograph was taken in connection with another criminal episode. However, there was no testimony from Detective McDonald or from any other witness that suggested that the photograph was taken in connection with any other criminal event or that the defendant was arrested *after* Studer had identified him in the array.

In view of the date on the placard, the fact that Detective McDonald testified that the source of the photographs was "our identification files" was not unduly prejudicial. Moreover, the judge gave a strong limiting instruction at the time that Detective McDonald was being questioned about the composition of the array. The jury were specifically instructed "not to draw any inference against this defendant because the police have his photograph" and that "[t]he fact that the police may have this defendant's picture does not mean the defendant committed this or any crime." "We presume, as we must, that a jury understands and follows limiting instructions . . . ." *Commonwealth v. Jackson*, 384 Mass. 572, 579 (1981).

As a separate ground for reversal, appellate counsel argues that trial counsel was ineffective in not objecting to the admission in evidence of unsanitized mug shots. As we have pointed out, trial counsel adopted the strategy of attacking the identifications made from the photographic array by attempting to show that the array was unduly suggestive.[6]

"In cases where tactical or strategic decisions of the defendant's [trial] counsel are at issue, we conduct our review

---

[6]The record also demonstrates that trial counsel challenged the opportunity of the identifying witnesses to observe the perpetrator at the time of the crime. On cross-examination, he vigorously questioned both Studer and Wilkerson on that point. Indeed, the record is replete with various inconsistencies in both identifying witnesses' testimony about the crime scene as they observed it.

with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful." *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991). "Instead, we require that such judgments be 'manifestly unreasonable' . . . . and this typically means loss of 'an otherwise available, substantial ground of defence.'" *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979) (citations omitted). We conclude that trial counsel's decisions were not "manifestly unreasonable."

Any decision involving the introduction in evidence of mug shots depends on the circumstances present in the case. By our decision we do not hold that it is proper to show unsevered, uncropped mug shots to the jury in every case. Rather, our decision is limited to the circumstances in this case. An important factor, of course, was trial counsel's decision to attack the composition of the photographic array at trial. Thus, the photographic evidence was particularly probative here, and the judge was careful to reduce any risk of prejudice to the defendant by his instructions to the jury.

2. *The judge's instruction on identification evidence.*

The judge delivered a jury instruction on identification based on the pattern instruction set out in the appendix to *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979). Appellate counsel claims that the judge committed error in that the judge did not include in his charge, "[Y]ou may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial." *Id.* at 311. There was no error.

The judge is not required to give all the suggested instructions set out in *Commonwealth* v. *Rodriguez, supra.* " '[T]hey may be modified or embellished as the evidence and allegations at trial require'." *Commonwealth* v. *Levasseur*, 32 Mass. App. Ct. 629, 639 (1992), quoting from *Commonwealth* v. *Rodriguez, supra* at 310 n.1.

As we stated, (see notes 1 & 2, *supra*), nothing in this record indicates that either identifying witness *failed* to make an identification of the defendant. Further, there is nothing in the record showing that either witness made any

identification inconsistent with the identifications made at trial. The judge's instructions to the jury were entirely proper.

3. *The judge's instructions on reasonable doubt.* The defendant claims that he is entitled to a new trial because the judge, in instructing the jury on reasonable doubt, told the jury:

> "Reasonable doubt is . . . when . . . the minds of the jurors are left in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

Appellate counsel argues that the use of the "moral certainty" language is error because, citing *United States* v. *Drake*, 673 F.2d 15, 21 (1st Cir. 1982), "the jury might feel justified in convicting based on a feeling rather than on the facts in the case."

The Supreme Judicial Court has held that use of the term was not error. *Commonwealth* v. *Conceicao*, 388 Mass. 255, 267 (1983). The charge as a whole adequately apprised the jury of the reasonable doubt standard.

4. *The prosecutor's closing argument.* During his closing argument, the prosecutor stated the following:

> "You are not here to punish. You are not here to give someone a break, look the other way, oh, well it wasn't me, I don't care, just let him go."

The defendant claims that the remarks implied that the Commonwealth only prosecutes guilty persons and that the jury should not turn a blind eye to the defendant's guilt; such comments, according to the defendant, are improper because they are incompatible with the presumption of innocence.

We consider remarks made during closing arguments in the context of the entire argument and in light of the judge's instructions to the jury and the evidence at trial. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 553 (1990). The challenged remarks were made in the context of the prosecutor's

statement to the jury that their role as fact finders is an important one and that they have to decide what the truth is, without considering extraneous factors. The judge instructed the jury to decide the case based on the facts, and not on personal feelings. Moreover, the judge instructed the jury that closing arguments are not evidence. Therefore, it is extremely unlikely that the jury would believe the prosecutor's remarks meant that the Commonwealth only prosecutes guilty offenders. There was no error.

*Judgments affirmed.*