COMMONWEALTH vs. ROBERT J. AMICO.

Middlesex. April 7, 1983. — April 12, 1983.

Present: GRANT, KAPLAN, & WARNER, JJ.

*Homicide. Practice, Criminal,* Argument by prosecutor, Instructions to jury.

Evidence at a murder trial from which the jury could have found that the defendant became upset and borrowed his wife's car on learning that his wife had sold his drums to the victim, that the car was observed at the entrance to the victim's driveway during the time span within which a pathologist fixed the time of death, and that the defendant's finger prints were found on a snare drum which lay near the body and which had not been acquired by the victim until some time after the date on which the defendant told police he had last been in the victim's house, when considered with the defendant's later inculpatory conduct and his conflicting and inculpatory statements to police, was sufficient to warrant the jury in concluding beyond a reasonable doubt that the defendant had killed the victim. [651-652]

At a murder trial the element of malice was made out by a pathologist's testimony concerning multiple stab wounds on the victim's body, at least five of which could have been fatal. [652]

Comments by the prosecutor during closing argument at a criminal trial, which intruded on the judge's function of explicating the law as to reasonable doubt, did not require reversal of the defendant's murder conviction, in light of the judge's curative instructions to the jury and his correct charge to them respecting reasonable doubt. [652]

A prosecutor's remark during closing argument at a criminal trial that there were "six points all of which have to be gotten around . . . by the defendant," when considered in context and in view of the judge's correct instructions to the jury, did not require reversal of the defendant's murder conviction. [653]

INDICTMENT found and returned in the Superior Court Department on October 21, 1980.

The case was tried before *Linscott,* J.

*William P. Homans, Jr.,* for the defendant.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

GRANT, J.  The appeal is from a conviction of murder in the second degree on an indictment charging the commission of a murder in the first degree in Stoneham on February 17, 1980.  See *Commonwealth* v. *Davis,* 380 Mass. 1, 12-17 (1980).  A companion conviction of larceny is not before us, as the relevant indictment was placed on file with the defendant's consent.  *Commonwealth* v. *Delgado,* 367 Mass. 432, 437-438 (1975).

1. There was evidence introduced by the Commonwealth in the course of its direct case from which the jury could have found the following facts.  The victim was a dealer in drums and gave instruction in their use.  The defendant became upset and borrowed his wife's car upon learning that his wife had sold his drums to the victim.  The car was observed parked close by the entrance to the victim's driveway during the time span within which the pathologist fixed the time of death.  The defendant's finger prints were found on a snare drum which lay near the body and which had not been acquired by the victim until some time after the date on which the defendant told the police he had last been in the victim's house.  The police searched the house for, but could not find, a wallet in which the victim had habitually carried his credit cards.  The defendant gave the police two conflicting stories as to his whereabouts during the evening in question, both of which the jury could have found to be false.  Eight days after the death, the defendant used one of the victim's credit cards to purchase gasoline after persuading an acquaintance to sign the victim's name on the sales slip.  When told by the investigating officer that he was under arrest, the defendant said, "What for, the Stoneham murder?  Did you get some more evidence?"

We have no question as to the sufficiency of the evidence to warrant a rational jury in concluding beyond a reasonable doubt that it was the defendant who had done the killing.  *Commonwealth* v. *LaCorte,* 373 Mass. 700,

702-703 (1977). *Commonwealth* v. *Clark,* 378 Mass. 392, 403-404 (1979). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). *Commonwealth* v. *Rojas,* 388 Mass. 626, 629 (1983). Contrast *Commonwealth* v. *Clary,* 388 Mass. 583, 589-594 (1983).

2. The element of malice was made out by the pathologist's testimony concerning the multiple stab wounds, at least five of which could have been fatal. *Commonwealth* v. *Richard,* 377 Mass. 64, 66 (1979). *Commonwealth* v. *Thomas,* 9 Mass. App. Ct. 875 (1980). Compare *Gagne* v. *Commonwealth,* 375 Mass. 417, 422 (1978).

3. Both counsel, during their respective closing arguments, intruded on the judge's function of explicating the law, to the point where the judge interrupted with the following: "I don't mind you people talking about presumption of innocence, and reasonable doubt, and a few other things, but for heaven's sake leave the definition of the crimes to me, will you." On one occasion during her closing the prosecutor defined "reasonable doubt" as "a doubt to which you can assign a reason." On two other occasions, she employed the phrase "a doubt based on [or upon] a reason."

The second paragraph of the charge reads: "I think before I say anything else I will make several references to the arguments of counsel. Each counsel spoke to you and sometimes they referred to the law. What the lawyers say about the law, as apt as it might be, is not the final statement on the law, that's up to the judge. And I will say to you that my definition of 'reasonable doubt', which I will give you in a few minutes, controls." The ensuing charge on that subject was unabashedly and correctly cribbed from *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850).

We are not persuaded that the presumptuous errors of the prosecutor require a new trial. Compare *Commonwealth* v. *Bjorkman,* 364 Mass. 297, 307-309 (1973); *Commonwealth* v. *Hughes,* 380 Mass. 596, 599-601 (1980); *Commonwealth* v. *Robinson,* 382 Mass. 189, 198-199 (1981).

4. In the course of his voir dire questioning of each individual juror the judge, acting at the request of the defendant's trial counsel, explained to the juror the meaning of the presumption of innocence and satisfied himself of the juror's understanding and acceptance of the proposition that the defendant "has no burden to establish his innocence." Defense counsel reminded the jurors of those colloquies on two separate occasions in the course of his closing argument. The prosecutor, in her closing argument, referred to "six points all of which have to be gotten around . . . by the defendant."

Taken in context, it is doubtful whether that remark was intended as anything more than a comment on what the prosecutor regarded as the strengths of her case and the weaknesses in the defendant's closing argument. The judge, immediately after the curative instructions referred to in part 3 hereof, said: "The attorney for the Commonwealth during her argument said, as I remember it, that there were at least six points upon which the government relied which the defendant had to get around. Now you know a defendant who is charged with a crime doesn't have to get around anything, he can just sit still. And if she may have meant, and I'm sure she didn't, to imply that he had the obligation to get around her six points, that just isn't so. You understand that." Later instructions to the same effect were impeccable.

In all the circumstances, we are of opinion that the prosecutor's remark does not require a new trial (compare *Commonwealth* v. *Gouveia*, 371 Mass. 566, 570-572 [1976]; *Commonwealth* v. *Smallwood*, 379 Mass. 878, 891-893 [1980]; *Commonwealth* v. *Costello*, 5 Mass. App. Ct. 838, 839 [1977]; *Commonwealth* v. *Porter, ante* 331, 336 [1983]; contrast *Commonwealth* v. *Hawley*, 380 Mass. 70, 85-86 [1980]), whether considered by itself or in conjunction with the remarks discussed in part 3 hereof.

The judgment on indictment No. 80-2944 is affirmed.

*So ordered.*