COMMONWEALTH *vs.* JUSTIN HOLMES. No. 90-P-1441. January 24, 1992. *Homicide. Practice, Criminal*, Instructions to jury, Argument by prosecutor. *Evidence*, Photograph. *Jury and Jurors*.

The defendant was indicted for murder in the first degree and convicted by a jury of murder in the second degree. On appeal, the defendant has raised numerous issues. None of them has any merit.

1. *Motion for required finding.* The defendant claims that the denial of his motion for a required finding of not guilty was error because the Commonwealth's evidence was insufficient (1) to identify the defendant as the individual who stabbed the victim or (2) to determine that the defendant had stabbed the victim with the requisite intent for murder in the second degree.

We review the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). During the early morning hours of June 11, 1989, two groups of youths — one group from Belmont, the other from Cambridge — engaged in a street fight. About two hours earlier, the two groups had confronted each other verbally. The victim was associated with the Belmont group; the defendant was a member of the Cambridge group.

After the initial confrontation, but before the start of the street fight, the defendant went with some of his friends, including one Chambers, to an apartment in Cambridge; another friend of the defendant, one Price, lived in that apartment. While there, they heard that the Belmont group had returned to Cambridge and had gathered at the intersection of Huron Avenue and Grove Street. Before leaving the apartment to confront the Belmont group, the defendant took a knife from a kitchen drawer. He handed Chambers another knife from the drawer.

The two groups met, words were exchanged, and a fight broke out. Chambers became engaged in a fight with the victim. They first exchanged

blows and then started to wrestle. The victim held Chambers in such a manner that the victim's right side was exposed. After Chambers called out for help, he saw the defendant strike the victim in the face. Chambers then heard two thud-like sounds near his head. The victim fell limp to the ground. Chambers saw the defendant standing nearby with a stick in his hand.

The police arrived, and the defendant and his friends fled the scene. Back at Price's apartment, the defendant told a few of his friends that he had stabbed someone during the fight. He stated to one friend that he "got him here," gesturing with his hand to the friend's right side below the armpit. Later, the defendant wiped a small amount of blood off one of his shoes.

At the scene of the fight, the police discovered the blade of the knife the defendant had taken from the apartment. It was stained with blood at its tip and base. The handle to the knife was discovered several feet away.

The victim died from a single stab wound to his right side, about twelve inches below the armpit. The size of the wound was consistent with the blade of the knife that the defendant had taken from the apartment. After the defendant learned that the victim had died, he returned to the scene of the fight to look for the knife. He told a friend that he was unsuccessful in finding the knife. Later, the defendant asked a friend if fingerprints could be obtained·from a bloody knife.

At trial, the Commonwealth relied largely on circumstantial evidence. "A web of convincing proof can be made up of inferences that are probable, not necessary." *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). Much of the defendant's arguments claiming that the judge committed error in denying the motion for a required finding of not guilty "are in reality directed toward the weight and credibility of the evidence, a matter wholly within the province of the jury." *Commonwealth* v. *Nardone*, 406 Mass. 123, 129-130 (1989).

"In order to convict in a criminal case, it is not necessary to show that the crime could not have been committed by any person other than the defendant or that no other person had an opportunity to commit it . . . ." *Brown* v. *Commonwealth*, 407 Mass. 84, 89 (1990). See also *Commonwealth* v. *Leach*, 160 Mass. 542, 551 (1894). The evidence showed that the defendant was at the scene of the murder, possessed the knife used to murder the victim, and was in a position to have stabbed the victim. Further, after the fight, he told friends that he had stabbed someone and demonstrated how he performed that act. That demonstration was consistent with the medical testimony showing the location of the fatal stab wound. Therefore, there was sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant was the individual who killed the victim. *Commonwealth* v. *Amico*, 15 Mass. App. Ct. 650, 651 (1983).

Further, a jury could find that the Commonwealth proved beyond a reasonable doubt the essential elements of murder in the second degree. The

evidence demonstrated that the defendant intended to kill or do grievous bodily harm to the victim or that he intended to do an act creating a plain and strong likelihood that the victim's death or grievous harm would follow. See *Commonwealth* v. *Puleio*, 394 Mass. 101, 108 (1985). The motion was properly denied.

2. *Lack of manslaughter instruction.* The defendant did not request an instruction on manslaughter and did not object to its absence from the judge's instructions to the jury. He now claims that it was error for the judge not to instruct the jury on voluntary manslaughter. We consider the defendant's argument under the "substantial risk of miscarriage of justice" standard. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

It is apparent from the record that the defendant's failure to request a manslaughter instruction was intentional.[1] The main issue at the trial was the identity of the individual who stabbed the victim. The defendant claimed that somebody else, possibly Chambers or Price, had committed the crime. The presence of the element of malice was not a contested issue. Generally, "[c]ounsel may not try a case on one theory of law, and then obtain appellate review on another theory which was not advanced at trial." *Commonwealth* v. *Lazarovich*, 410 Mass. 466, 476 (1991). On this record, the judge was not required to charge the jury, sua sponte, on the crime of manslaughter.

Even if an instruction had been requested, the evidence did not warrant such an instruction. Viewed in the light most favorable to the defendant, *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975), the evidence showed that the defendant, armed with a knife, stabbed the victim from behind. There was no evidence that the defendant was provoked by the victim, faced sudden combat, or possessed the subjective state of mind to require a manslaughter instruction. See *Commonwealth* v. *Pitts*, 403 Mass. 665, 667 (1989). The evidence did not indicate that the stabbing was unintentional or resulted from wanton or reckless conduct in the course of an affray. See *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245-246 (1981). There was no evidence warranting a manslaughter instruction based on excessive use of force in self-defense or defense of another. See *Commonwealth* v. *Carrion*, 407 Mass. 263, 268 (1990). Therefore, there was no risk of a miscarriage of justice created by the omission of a manslaughter instruction.

3. *Other issues.* The other issues raised by the defendant do not require detailed exposition.

a. *Admission in evidence of autopsy photographs.* During the testimony of the pathologist, the Commonwealth introduced in evidence, without objection, some autopsy photographs. The judge ruled that the photographs were relevant on a material issue in the case. The pathologist testified that

---

[1]Indeed, we note that at the charge conference the defendant specifically stated that he did not want instructions on self-defense or defense of another.

the fatal wound shown in the photographs was consistent with being made by the blade of the knife that the defendant had brought to the melee. Further, the depth of the wound as shown in the photographs was relevant in regard to the presence of malice. The defendant argues that the photographs were inflammatory because of some alleged emotional reaction of a few spectators. That reaction, if any, did not come from the photographs themselves but rather from the pathologist's testimony. The judge did not abuse his discretion in allowing the photographs to be placed in evidence. See *Commonwealth* v. *Waters*, 399 Mass. 708, 715-716 (1987).

b. *Judge's instruction on inferences.* The defendant claims that the judge in explaining inferences misinstructed the jury and "trivialized" the task of the jury by using a "chocolate cake" analogy. A virtually identical illustration was approved in *Commonwealth* v. *Shea*, 398 Mass. 264, 270-271 & n.3 (1986), a prosecution for armed assault with intent to murder, assault and battery by means of a dangerous weapon, and disorderly conduct, and in *Commonwealth* v. *Gallagher*, 408 Mass. 510, 519-520 & n.8 (1990), a prosecution for murder in the first degree. The defendant's argument is without merit.

c. *The prosecutor's closing argument.* The defendant claims that the prosecutor committed prejudicial error in his closing argument. He contends that the prosecutor attempted to draw sympathy for the victim and misstated certain portions of the evidence. The alleged errors were not the subject of objections. We have reviewed the prosecutor's argument and find that it was entirely proper.

d. *The jury selection procedure.* The defendant attacks the jury selection procedure employed by the judge. That procedure was in compliance with Superior Court Rule 6 (1974). See *Commonwealth* v. *Brown*, 395 Mass. 604, 606 (1985). Once the jurors were selected, the defendant indicated he was content with the jury composition and, in fact, had several remaining peremptory challenges. Further, the defendant was clearly told of the method of jury empanelment to be followed before the procedure began. There was no error.

e. *Admission of "mugshots."* In an effort to show the defendant's hairstyle at the time of the fight, the prosecutor sought introduction of police department photographs showing the defendant in front and profile views. The defendant claims that the trial judge committed error when he allowed in evidence these "mugshots" and that the judge should have allowed the defendant to substitute the photograph on his driver's license. There was no error. The judge ruled that the "mugshots" were much clearer and showed the defendant's hair much better than the photograph on the defendant's driver's license.

The photographs were admissible on the question of identification — a live issue at the trial. The procedures outlined in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 309 (1979), and in *Commonwealth* v. *Blaney*, 387 Mass. 628, 638 (1982), in regard to the introduction in evidence of such

photographs were strictly followed. In addition, in this case, even if the jury recognized that the photographs were connected with the police department, there was no reason for them to conclude that the photographs were taken prior to the night of the fight or otherwise indicated that the defendant had a prior criminal record. "The jury knew that the defendant had been arrested for the crime being tried. . . ." *Commonwealth* v. *Waters*, 399 Mass. at 715. Indeed, the whole point of the photographs was to show the defendant's appearance on the night in question. The defendant need not have suffered any prejudice from the admission of the photographs.

f. *The adequacy of the evidence before the grand jury.* Contrary to the defendant's claim, there was ample evidence before the grand jury to indict the defendant for murder.

4. *Conclusion.* Both the Commonwealth and the defendant were represented by competent counsel. The conduct of the trial was exemplary. There is no reason to grant a new trial.

*Judgment affirmed.*

*George Hassett* for the defendant.
*Michael Fabbri*, Assistant District Attorney, for the Commonwealth.