COMMONWEALTH *vs.* PETER HRYCENKO.

No. 02-P-1495.

Suffolk. December 17, 2003. - June 25, 2004.

Present: ARMSTRONG, C.J., BECK, & CYPHER, JJ.

*Motor Vehicle,* Operating under the influence, License to operate, Leaving scene of accident, Citation for violation of motor vehicle law. *Practice, Criminal,* Dismissal, Citation for violation of motor vehicle laws, Identification of defendant in courtroom. *Evidence,* Traffic citation, Photograph, Identification. *Identification.*

A District Court judge properly allowed the Commonwealth's motion to vacate the dismissal of a criminal complaint, where the complaint had been dismissed for lack of prosecution occasioned by the complaining witness's failure to appear, which was out of the control of the prosecution; moreover, the defendant made no showing of prejudice to him by the reinstatement of the complaint. [381-382]

At a criminal trial, admission of a police photograph of the defendant did not violate the defendant's due process rights and was not unduly prejudicial, where there was no reference to the photograph as a "mugshot," no indicia identifying the photograph appeared, and the photograph was admitted not to identify the defendant, but rather to verify the difference between the defendant's appearance at the time of the incident at issue and his appearance in the court room. [383-384]

COMPLAINT received and sworn to in the West Roxbury Division of the District Court Department on March 18, 1999.

A motion to vacate the dismissal of the complaint, filed on April 14, 2000, was heard by *Robert C. Rufo,* J., and the case was tried before *Kathleen E. Coffey,* J.

*Robert O. Berger, III,* for the defendant.

*Anne M. Thomas,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Peter Hrycenko, appeals from his convictions by a District Court jury of operating a motor vehicle under the influence of alcohol, G. L. c. 90, § 24(1)(*a*); driving

after suspension of his operator's license, G. L. c. 90, § 23; leaving the scene of a collision after causing property damage, G. L. c. 90, § 24(2)(*a*); and negligent operation, G. L. c. 90, § 24(2)(*a*).[1,2] The defendant raises three issues: (1) that the Commonwealth's motion to vacate the judge's dismissal of the complaint should not have been allowed; (2) that the issuance of a citation by the police five days after the collision violated the provisions of G. L. c. 90C, § 2; and (3) that a "mugshot" of the defendant should not have been admitted in evidence.

1. *Background.* We summarize the relevant background facts the jury could have found and reserve other details for later discussion. On February 11, 1999, at approximately 8:00 P.M., while driving in the West Roxbury section of Boston, Ann Jeanette Mincey noticed a copper-colored automobile approaching on her side of the road's double center line. Mincey swerved to avoid a head-on collision and the automobile hit the driver's side of her motor vehicle. The automobile did not stop. Mincey observed that the automobile was an older model Chrysler. She wrote the license plate number on her hand and followed the automobile. She saw it traveling very fast and swerving from side to side, crossing back and forth across the road's yellow line. Mincey managed to cut in front of the automobile and block it in.

Mincey approached the driver and demanded to see his license. She observed that the driver was an older white male with black hair, thick black eyebrows, and a mustache. His speech was slurred and his upper body was swaying. As Mincey returned to her automobile to get a pen, he drove off.

Joseph Matthews, a coworker of Mincey, witnessed the colli-

---

[1]The defendant was found responsible on a charge of failing to stay within marked lanes, G. L. c. 89, § 4A. This charge was filed with the defendant's consent.

[2]The statutory references in the complaint and the amended complaint appear to be unclear. The defendant does not make any claim that he was prejudiced by any potential ambiguity and we perceive no such prejudice. Descriptions of the charged offenses appear on the face of the complaint and it is apparent from the record that the defendant was aware of the statutory charges brought against him. Cf. *Commonwealth* v. *Lombardo*, 23 Mass. App. Ct. 1006, 1008 (1987); *Commonwealth* v. *Fernandes*, 46 Mass. App. Ct. 455, 459-460, *S.C.*, 430 Mass. 517 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000).

sion and, recognizing her, followed Mincey, stopping when she blocked in the automobile. He described the driver as an older white man with a medium build and a mustache. Mincey flagged down State Trooper Megan Mason. She related what had happened and described the driver.

Trooper Mason ran a radio check on the license plate number and determined that the automobile was a 1985 Plymouth Caravelle, registered to Harry Hrycenko at an address in West Roxbury. Trooper Mason went to the scene of the collision and observed debris in the road. She then went to the West Roxbury address, where she saw the Plymouth in front of the house. She found the hood was still warm, the left front headlight was broken, and there were scrapes on the front fender.

Trooper Mason saw the defendant come out of a side door of the house and head toward the Plymouth. She heard the clinking of what she thought were keys. The defendant saw Trooper Mason, and when she identified herself and said that she wanted to talk to him, he ran back into the house.

Trooper Mason rang the doorbell. The defendant's mother answered the door. Trooper Mason explained that she was investigating a hit-and-run accident. Eventually, the defendant came to the door and Trooper Mason asked if he had been driving the Plymouth. He denied it, stating that he had been home all night and was "shitfaced." The defendant became hostile and he and his mother asked Trooper Mason to leave. As Trooper Mason returned to her cruiser, Trooper Poore arrived and also talked with the defendant. The defendant continued to act aggressively and appeared to be under the influence of alcohol. He told Trooper Poore that someone else had driven the Plymouth. Trooper Mason inspected the Plymouth but found no damage that would indicate that anyone had broken into it. The defendant said that he did not have a license. A computer check confirmed that his license had been suspended.

Harry Hrycenko, the defendant's father and owner of the Plymouth, told the troopers that he had not driven in years. He was much shorter than the defendant and had white hair. The next day, Mincey identified the Plymouth as the vehicle that had collided with her car.

Trooper Mason issued a citation for five violations on Febru-

ary 16, 1999. A complaint was issued in the District Court on March 18, 1999.

2. *Reinstatement of the charges after dismissal.* At the second scheduled trial date of February 29, 2000, Mincey did not appear to testify, and the judge dismissed the case without prejudice for lack of prosecution.[3] Forty-five days later the Commonwealth moved to vacate the dismissal and the judge allowed the motion.

The defendant asserts that because the Commonwealth failed timely to appeal the dismissal it "cannot now seek review of the propriety of [the dismissal]." *Commonwealth* v. *Steadward,* 43 Mass. App. Ct. 271, 273 (1997). The Commonwealth, however, properly "sought reconsideration of the dismissal of the complaint" in the District Court. *Monahan* v. *Commonwealth,* 414 Mass. 1001, 1002 (1993).

The defendant also claims that the judge was precluded from reinstating the charges by *Commonwealth* v. *Steadward, supra.* In *Steadward,* a complaint charging the defendant with operation of a motor vehicle while under the influence of alcohol was dismissed because the Commonwealth failed to comply with the citation provisions in G. L. c. 90C, § 2 (the "no-fix" statute). The Commonwealth failed to appeal from that dismissal. Five months later, one of the persons injured by the defendant filed a complaint under G. L. c. 90C, § 4, which was also dismissed. We affirmed, holding that the earlier dismissal for failure to comply with § 2 precluded the issuance of another complaint.

*Steadward* does not apply to the facts of this case. In the instant matter, the Commonwealth did not seek a second complaint but rather challenged the dismissal with a motion to vacate. Second, the complaint against Hrycenko had been dismissed for lack of prosecution occasioned by Mincey's failure to appear, rather than for failure to comply with the "no-fix" statute. Her appearance was out of the control of the prosecution and there was no evidence of prosecutorial

---

[3]It appears from the record that the Commonwealth had not subpoenaed Mincey prior to the February trial date and did not object to the dismissal without prejudice. Contrast *Commonwealth* v. *Clegg, ante* 197, 199-203 (2004).

misconduct. See *Commonwealth* v. *Cronk*, 396 Mass. 194, 199 (1985), and cases cited.

We conclude that the judge properly allowed the Commonwealth's motion. Furthermore, the defendant has not made any showing of prejudice to him by the reinstatement of the charges. See generally *Commonwealth* v. *King*, 400 Mass. 283, 290-292 (1987), and cases cited (no dismissal absent prejudice, even when misconduct has occurred). There was no error.

3. *Alleged untimely citation under G. L. c. 90C, § 2.* The defendant also claims that the strict time limit of the statute was thwarted by reinstatement of the complaint, because the citations were not issued "at the time and place" of the collision, but five days after the collision. See G. L. c. 90C, § 2, as amended by St. 1985, c. 794, § 3. Because the defendant did not file a motion to dismiss on this ground, the claim is waived. "All defenses available to a defendant by plea, other than not guilty, shall only be raised by a motion to dismiss or by a motion to grant appropriate relief." Mass.R.Crim.P. 13(c)(1), 378 Mass. 872 (1979). *Commonwealth* v. *Spear*, 43 Mass. App. Ct. 583, 586-587 (1997).[4]

In any event, were we to consider the issue we would conclude that the failure to issue the citation within the prescribed period of time would, in the circumstances of this case, fall within the exception to G. L. c. 90C, § 2, which provides the police with additional time when "reasonably necessary to determine the . . . identity of the violator . . . ." Because the defendant did not stop and identify himself after the collision, the citation could not have been issued at the scene. The police investigation was not complete until Mincey identified the automobile and the police gathered additional information linking the defendant to operation of the Plymouth.

"General Laws c. 90C, § 2, . . . was designed to prevent the manipulation and misuse of traffic citations, and to provide

---

[4]The defendant asserts that trial counsel was ineffective for not filing a motion to dismiss based on the untimely citation. For the reasons given in this decision, such a motion would have been unsuccessful, and it is not ineffective assistance of counsel not to pursue a motion "with a minimal chance of success." *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983), and cases cited.

prompt and definite notice of the nature of the alleged offense to the putative violator." *Commonwealth* v. *Babb*, 389 Mass. 275, 283 (1983). While the procedures of the statute must be enforced with appropriate strictness, "[o]n numerous occasions, where the purposes of the statute are not frustrated, failure to comply strictly with its requirements has not been fatal to the prosecution." *Commonwealth* v. *Barbuto*, 22 Mass. App. Ct. 941, 943 (1986). "[W]here a defendant has acted unlawfully to evade detection, we will not second guess" an officer's judgment on investigative methods or whether they were the most expeditious methods. *Ibid.* The delay of five days was not unreasonable.

4. *Admission of the defendant's "mugshot."* The defendant claims that a photograph used at trial, consisting of a front view and a profile view of his head, was a "mugshot," and that its use violated his due process rights and was unduly prejudicial, creating a risk of mistaken identification.

The trial was held sixteen months after the collision. On the morning of the trial, Mincey and Matthews separately viewed a lineup at the court house and mistakenly selected a Boston police officer as the driver of the automobile that collided with Mincey's car. At trial, they failed to identify the defendant in the court room.

During the course of Trooper Mason's testimony describing her encounter with the defendant at the house in West Roxbury the night of the collision, she identified the defendant in the court room, and was asked to describe how his appearance in the court room differed from her observations on the night of the collision. She stated that when she saw the defendant the night of the collision, he then had no beard, his hair was shorter, and he was considerably thinner.

Over objection, the prosecutor introduced a copy of a photograph of the defendant that Trooper Mason had obtained by facsimile from the Boston police in the course of her investigation. Before the photograph was introduced, the judge instructed the jury that "police departments collect pictures of many people from many different sources and for many different reasons. You are not to speculate what the reason was in this case. The fact that the police may have had the Defendant's

picture does not mean that the Defendant committed this or any other crime." The instruction is comparable to that cited as adequately cautionary in *Commonwealth* v. *Picher*, 46 Mass. App. Ct. 409, 416-417 (1999). Trooper Mason stated that the photograph more closely resembled the defendant as he looked on the night of the collision than did his present appearance in the court room.

There is a risk that the use of "mugshots" will suggest to a jury that a defendant may have a prior criminal record. *Commonwealth* v. *Gerald*, 356 Mass. 386, 388 (1969). However, the admission in evidence of mugshots, standing alone, has not been held to constitute reversible error. *Commonwealth* v. *Tuitt*, 393 Mass. 801, 809 (1985). Generally, where such photographs are used, judges and prosecutors should use reasonable means to avoid calling to the jury's attention their source. *Commonwealth* v. *Blaney*, 387 Mass. 628, 638 (1982).

Here, the photograph of the defendant did not cause undue prejudice. Although the source was identified, there was no reference to it as a mugshot, and no indicia identifying the photograph as a mugshot appear, such as height marks, the source, or any word or number identification. Contrast *Commonwealth* v. *Vardinski*, 438 Mass. 444, 448 n.7 (2003).

The photograph was not admitted to identify the defendant but rather to verify the difference between the defendant's appearance at the time of the collision and his appearance in the court room, and as a ground from which the jury might infer why Mincey and Matthews failed to select the defendant from the lineup and failed to identify him in the court room.[5] In any event, the jury knew the photograph had been obtained from the Boston police close to the time of the collision and in the course of the investigation, and there was no indication that the photograph had been taken in connection with another, prior criminal matter. Compare *Commonwealth* v. *Holmes*, 32 Mass. App. Ct. 906, 910 (1992). There was no error.

*Judgments affirmed.*

[5]The prosecutor initially sought to introduce the photograph through Mincey, but the judge properly restricted the introduction to Trooper Mason's testimony, thereby further avoiding its potential prejudicial use for identification of the defendant.